ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (168593)
ROBERT R. HENSSLER JR. (216165)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
bhenssler@rgrdlaw.com

BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP
DAVID R. STICKNEY (188574)
BENJAMIN GALDSTON (211114)
12481 High Bluff Drive, Suite 300
San Diego, CA  92130
Telephone:  858/793-0070
858/793-0323 (fax)
davids@blbglaw.com
beng@blbglaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| In re QUALITY SYSTEMS, INC. SECURITIES LITIGATION | No. 8:13-cv-01818-CJC-JPR |
| | CLASS ACTION |
| This Document Relates To: | LEAD PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE CLASS; AND (III) APPROVAL OF NOTICE TO THE CLASS, AND INCORPORATED MEMORANDUM OF LAW |
| ALL ACTIONS. | |
| | JUDGE:   Honorable Cormac J. Carney |
| | DATE:    August 13, 2018 |
| | TIME:    1:30 p.m. |
| | DEPT:    9B |

1452807_1

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ............................................................... 1

MEMORANDUM OF LAW ............................................................................. 2

I.  PRELIMINARY STATEMENT ................................................................. 2

II.  OVERVIEW OF THE LITIGATION ......................................................... 4

III.  SETTLEMENT NEGOTIATIONS .......................................................... 6

IV.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................................................................................... 7

    A.  The Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel ................. 9

    B.  The Substantial Benefits for the Class, Weighted Against the Litigation Risks, Support Preliminary Approval ............................... 11

    C.  The Stage of the Proceedings at Which the Settlement Was Achieved Supports Preliminary Approval ........................................ 14

V.  CERTIFICATION OF THE CLASS FOR PURPOSES OF THE SETTLEMENT IS APPROPRIATE ................................................... 15

    A.  The Requirements of Rule 23(a) Are Met .......................................... 16

        1.  Numerosity Is Established ...................................................... 16

        2.  Commonality Is Established ................................................... 17

        3.  Typicality Is Established ........................................................ 18

        4.  The Lead Plaintiffs and Lead Counsel Are Adequate ............. 19

    B.  The Requirements of Rule 23(b)(3) Are Met ..................................... 20

        1.  Common Questions Predominate ............................................ 21

        2.  A Class Action Is a Superior Method of Adjudicating Lead Plaintiffs' Claims ...................................................... 23

VI.  NOTICE TO THE CLASS IS WARRANTED ......................................... 24

VII.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS ........................... 25

VIII.  CONCLUSION ................................................................................. 26

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abdullah v. U.S. Sec. Assocs., Inc.*,
   731 F.3d 952 (9th Cir. 2013) ................................................................. 17

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ................................................................. 16, 21

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ................................................................. 21

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ................................................................. 22

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ................................................................. 16

*Brown v. China Integrated Energy Inc.*,
   2015 WL 12720322 (C.D. Cal. Feb. 17, 2015) ................................ 16, 18, 19, 21

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................. 7

*Cohorst v. BRE Prop., Inc.*,
   2011 WL 7061923 (S.D. Cal. Nov. 14, 2011) ....................................... 9

*Dilts v. Penske Logistics, LLC*,
   2014 WL 12515159 (S.D. Cal. July 11, 2014) ....................................... 8

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011) ................................................................. 21

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989) ................................................................. 7

*Gen. Tel. Co. of N.W., Inc. v. Equal Emp. Opportunity Comm'n*,
   446 U.S. 318 (1980) ................................................................. 16

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014) ................................................................. 13, 21, 22

**Page**

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................ 8, 19

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ............................................................... 18

*Hatamian v. Advanced Micro Devices, Inc.*,
  2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ............................ 21, 24

*Hopson v. Hanesbrands Inc.*,
  2008 WL 3385452 (N.D. Cal. Aug. 8, 2008) ....................................... 8

*In re Cooper Cos. Inc. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009) .............................................*passim*

*In re Emulex Corp. Sec. Litig.*,
  210 F.R.D. 717 (C.D. Cal. 2002) ....................................................... 19

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................................... 9

*In re Intuitive Surgical Sec. Litig.*,
  2016 WL 7425926 (N.D. Cal. Dec. 22, 2016),
  *reconsideration denied*, 2017 WL 4355072
  (N.D. Cal. Sept. 29, 2017) ........................................................... 17, 18

*In re Juniper Networks, Inc. Sec. Litig.*,
  264 F.R.D. 584 (N.D. Cal. 2009) ......................................... 18, 20, 23

*In re LendingClub Sec. Litig.*,
  282 F. Supp. 3d 1171 (9th Cir. 2017) ................................................ 19

*In re MGM Mirage Sec. Litig.*,
  708 F. App'x 894 (9th Cir. 2017) ...................................................... 25

*In re Neopharm, Inc. Sec. Litig.*,
  705 F. Supp. 2d 946 (N.D. Ill. 2010) ................................................ 12

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) ............................................................. 11

**Page**

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................. 9

*In re Quality Sys., Inc. Sec. Litig.*,
   60 F. Supp. 3d 1095 (C.D. Cal. 2014),
   *rev'd and remanded*, 865 F.3d 1130 (9th Cir. 2017) ........................... 12

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) ................................................... 5, 12, 13

*In re REMEC Inc. Sec. Litig.*,
   702 F. Supp. 2d 1202 (S.D. Cal. 2010) ............................................... 12

*In re Scientific Atlanta, Inc. Sec. Litig.*,
   754 F. Supp. 2d 1339 (N.D. Ga. 2010) ............................................... 12

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................ 8

*In re VeriSign, Inc. Sec. Litig.*,
   2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ..................................... 17

*In re Williams Sec. Litig.*,
   496 F. Supp. 2d 1195 (N.D. Okla. 2007),
   *aff'd sub nom. In re Williams Sec. Litig.-WCG Subclass*,
   558 F.3d 1130 (10th Cir. 2009) ......................................................... 12

*In re Zonagen, Inc. Sec. Litig.*,
   322 F. Supp. 2d 764 (S.D. Tex. 2003) ................................................ 12

*Johnson v. General Mills, Inc.*,
   2013 WL 3213832 (C.D. Cal. June 17, 2013) ...................................... 7

*Kmiec v. Powerwave Techs., Inc.*,
   2015 WL 12914343 (C.D. Cal. Dec. 4, 2015) .................................... 11

*Lewis v. Green Dot Corp.*,
   2017 WL 4785978 (C.D. Cal. June 12, 2017) ...................................... 7

**Page**

*Low v. Trump Univ., LLC*,
    246 F. Supp. 3d 1295 (S.D. Cal. 2017) ............................................................ 14

*Lumen v. Anderson*,
    280 F.R.D. 451 (W.D. Mo. 2012) .................................................................... 22

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .......................................................................... 17

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*,
    2017 WL 2257130 (E.D. Cal. May 23, 2017) ................................................ 16

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
    311 F.R.D. 590 (C.D. Cal. 2015) .................................................................... 16

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,
    292 F. Supp. 3d 1018 (S.D. Cal. 2017) ............................................................. 9

*Officers for Justice v. Civil Serv. Comm'n of City and Cty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................ 8

*Pataky v. Brigantine, Inc.*,
    2018 WL 3020159 (S.D. Cal. June 18, 2018) ................................................... 9

*Pederson v. Airport Terminal Servs.*,
    2018 WL 2138457 (C.D. Cal. Apr. 5, 2018) .................................................. 11

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ...................................................................................... 23

*Roberti v. OSI Sys. Inc.*,
    2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) .................................................. 11

*Rodriguez v. W. Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................ 7, 14, 25

*Salazar v. Midwest Servicing Grp., Inc.*,
    2018 WL 3031503 (C.D. Cal. June 4, 2018) .................................................. 11

1452807_1

LEAD PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL
Case No. 8:13-cv-01818-CJC-JPRx

**Page**

*Sandoval v. Tharaldson Employee Mgmt., Inc.*,
  2010 WL 2486346 (C.D. Cal. June 15, 2010)................................................... 25

*Satchell v. Fed. Express Corp.*,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................................... 11

*Smilovits v. First Solar, Inc.*,
  295 F.R.D. 423 (D. Ariz. 2013)........................................................................ 22

*Tait v. BSH Home Appliances Corp.*,
  289 F.R.D. 466 (C.D. Cal. 2012) ..................................................................... 16

*Todd v. STAAR Surgical Co.*,
  2017 WL 821662 (C.D. Cal. Jan. 5, 2017)................................................... 22, 23

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ........................................................................... 8, 14

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ............................................................................. 7

*Vinh Nguyen v. Radient Pharms. Corp.*,
  287 F.R.D. 563 (C.D. Cal. 2012) ..................................................................... 23

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................................ 17

*Weeks v. Kellogg Co.*,
  2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) .................................................. 13

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ........................................................................... 13

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4, *et seq*.............................................................................................*passim*
  §78u-4(a)(7)..................................................................................................... 25

**Page**

Federal Rules of Civil Procedure
    Rule 23.................................................................................21, 24, 25
    Rule 23(a) ......................................................................... 16, 19
    Rule 23(a)(2).................................................................... 17, 18
    Rule 23(a)(3)............................................................................ 18
    Rule 23(a)(4)............................................................................ 19
    Rule 23(b) ......................................................................... 16, 20
    Rule 23(b)(3) ............................................................20, 21, 23, 24
    Rule 23(e) ............................................................................ 1, 7
    Rule 26(f)................................................................................... 5
    Rule 23(g) ............................................................................... 20
    Rule 30(b)(6) ....................................................................... 5, 14

17 C.F.R.
    §229.404 ................................................................................... 2

**SECONDARY AUTHORITIES**

Laarni T. Bulan, Ellen M. Ryan and Lauren E. Simmons,
    *Securities Class Action Settlements: 2017 Review and Analysis*
    (Cornerstone Research 2018) ............................................... 15

MANUAL FOR COMPLEX LITIGATION (3d ed. 1995)
    §30.42 ....................................................................................... 9

Stefan Boettrich and Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation:*
    *2016 Full-Year Review* (NERA Jan. 2017)........................ 15

**LEGISLATIVE HISTORY**

H.R. Rep. No. 104-369 (1995) ................................................... 20

# NOTICE OF MOTION AND MOTION

Lead Plaintiffs Arkansas Teacher Retirement System ("ATRS") and City of Miami Fire Fighters' and Police Officers' Retirement Trust ("Miami") (collectively "Lead Plaintiffs") move pursuant to Fed. R. Civ. P. 23(e) for entry of the Settling Parties' agreed-upon Proposed Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), attached hereto as Exhibit 1. If entered, the Preliminary Approval Order will, among other things:

(1)     Preliminarily approve the proposed class action settlement for $19,000,000.00, subject to notice to the Class and later consideration of final approval to resolve this Litigation in its entirety;

(2)     Certify the Class for purposes of the Settlement and appoint Lead Plaintiffs as Class Representatives and Lead Counsel as Class Counsel;

(3)     Approve A.B. Data, Ltd. ("A.B. Data") as Claims Administrator and approve the form, content and manner of the class notices to Class Members; and

(4)     Schedule a hearing, and certain deadlines related thereto, on final approval of the Settlement, proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and litigation expenses.

The specific terms of the proposed Settlement are set forth in the Stipulation of Settlement dated July 16, 2018 (the "Stipulation"), attached hereto as Exhibit 2.[1]

---

[1]     All capitalized terms used herein that are not otherwise defined herein shall have the meanings provided in the Stipulation.

# MEMORANDUM OF LAW

## I.   PRELIMINARY STATEMENT

After more than four years of litigation, including an appeal to the Ninth Circuit, briefing on Defendants' petition for a writ of certiorari to the Supreme Court of the United States, and significant merits discovery, and following extensive arm's-length negotiations, the Settling Parties have reached a proposed Settlement of this securities class action in exchange for $19,000,000.00 for the benefit of the Class.[2] Lead Plaintiffs now request that the Court preliminarily approve the proposed Settlement.  As set forth below, the Settlement is the product of good-faith, arm's-length negotiations between experienced counsel, including under the supervision of a respected mediator, Gregory P. Lindstrom, Esq., of Phillips ADR, who is experienced in complex securities litigation.  The Settlement represents a substantial recovery that falls well within the range of possible approval and is a very good result for the Class.

Lead Plaintiffs also request certification of the Class for settlement purposes, and appointment of Lead Plaintiffs as Class Representatives and Lead Counsel as Class Counsel.  Additionally, Lead Plaintiffs seek approval of the form and substance of the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Expenses ("Notice"); Proof of Claim and Release form ("Proof of Claim" or "Claim Form"); and the Summary Notice of (I) Pendency of Class Action and Proposed Settlement;

---

[2]   "Class" means all Persons or entities who purchased or otherwise acquired QSI common stock during the Class Period and were damaged thereby.  Excluded from the Class are (a) Defendants; (b) immediate family members of the individual Defendants (as defined in 17 C.F.R. §229.404 Instructions (1)(a)(iii) and (1)(b)(ii)); (c) present or former executive officers or directors of QSI and their immediate family members (as defined in 17 C.F.R. §229.404 Instructions (1)(a)(iii) and (1)(b)(ii)); (d) any firm or entity in which any Defendant has or had a controlling interest during the Class Period; (e) any affiliates, parents, or subsidiaries of QSI; (f) all QSI plans that are covered by ERISA; and (g) the legal representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any excluded Person, in their respective capacity as such.  Also excluded from the Class are those Persons who exclude themselves by submitting a request for exclusion that is accepted by the Court.

(II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Expenses ("Summary Notice"), appended as Exhibits A-1, A-2 and A-3 to the Preliminary Approval Order. Lead Plaintiffs also seek the Court's approval of A.B. Data as Claims Administrator and the means and methods for disseminating notice of the Settlement and a finding that such notice comports with due process and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4, *et seq.*

Entry of the Settling Parties' agreed-upon proposed Preliminary Approval Order, attached hereto as Exhibit 1, will begin the process of considering the proposed Settlement by authorizing notice to the Class of the Settlement's terms and conditions. A final approval hearing (the "Settlement Hearing") will then be conducted so that the Settling Parties and Class Members may present evidence enabling the Court to make a final determination as to whether the Settlement is fair, reasonable, and adequate.

Lead Plaintiffs submit that the $19,000,000.00 proposed Settlement is a very good result for the Class, particularly when considering the risk of a much lesser recovery, or no recovery at all, if the case proceeded through dispositive motions and trial. The Settlement was informed by a comprehensive investigation, motion practice and appellate review of the sufficiency of the Amended Complaint's allegations, significant discovery by the Settling Parties, and intensive arm's-length negotiations during mediation before Mr. Lindstrom, an experienced neutral, personally attended by a representative of Lead Plaintiff ATRS. For the reasons stated herein, Lead Plaintiffs respectfully request that the Court grant this unopposed motion.

If the Court grants preliminary approval of the Settlement, notice will be given to the Class, informing Members of their right to object or opt out of the Class and of the date set for the final Settlement Hearing. In advance of the final Settlement Hearing, Lead Plaintiffs will submit comprehensive final approval papers that set forth the full record for the Court. These papers will include Lead Plaintiffs' motion for final approval of the proposed Settlement and Lead Counsel's motion for an award of attorneys' fees and litigation expenses, along with detailed supporting declarations.

## II.    OVERVIEW OF THE LITIGATION

This securities fraud class action was commenced with the filing of an initial complaint on November 19, 2013.  ECF No. 1.  Following briefing, and pursuant to the PSLRA, on February 4, 2014, the Court appointed Miami and ATRS as Lead Plaintiffs for the proposed class and approved Lead Plaintiffs' selection of Robbins Geller Rudman & Dowd LLP ("RGRD") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel.  ECF No. 22.

On April 7, 2014, Lead Plaintiffs filed an Amended Complaint (the "Amended Complaint").  ECF No. 26.  The Amended Complaint generally alleged that during the 14-month Class Period, from May 26, 2011 through July 25, 2012, inclusive, Defendants made a series of material misrepresentations concerning QSI's current and projected sales and financial performance.  The Amended Complaint alleged that Defendants' misrepresentations violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").  The Amended Complaint also alleged insider trading violations under Section 10(b) of the Exchange Act and Rule 10b-5 against Defendant Plochocki.  The Amended Complaint was based upon a thorough pre-filing investigation conducted by Lead Counsel that included, among other things, a review and analysis of: (i) QSI's public filings with the SEC; (ii) research reports regarding QSI and the medical practice management software industry and market by securities and financial analysts; (iii) transcripts of QSI earnings conference calls and presentations; (iv) economic analysis of the price movement in QSI common stock; (v) information obtained from former QSI employees; and (vi) other publicly available material and data.

On June 20, 2014, Defendants filed a motion to dismiss the Amended Complaint. ECF No. 29.  Following full briefing and a hearing on the motion, in October 2014, the Court granted Defendants' motion to dismiss with prejudice.  ECF No. 39.

Thereafter, on November 17, 2014, Lead Plaintiffs filed their motion for reconsideration regarding the Court's order on Defendants' motion to dismiss.  ECF

No. 40.  After briefing was complete, on December 23, 2014, the Court took the motion under submission and on January 5, 2015, the Court denied Lead Plaintiffs' motion for reconsideration.  ECF No. 46.

On January 30, 2015, Lead Plaintiffs filed their Notice of Appeal with the Ninth Circuit Court of Appeals.  ECF No. 47.  Following briefing from the parties, the Ninth Circuit heard oral argument on December 5, 2016.  On July 28, 2017, the Ninth Circuit issued its opinion, reversing and remanding the case back to the District Court. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017).  On November 7, 2017, Defendants filed their Answer to the Amended Complaint (ECF No. 60) and, on November 16, 2017, the Court issued a Scheduling Order (ECF No. 64) and an Order Regarding Settlement Procedures, Pre-Trial Conference and Trial.  ECF No. 65.

Following remand, the parties also promptly commenced discovery.  Among other things, the parties exchanged initial disclosure statements pursuant to Rule 26(f) and served requests for production of documents, interrogatories, requests for admissions, subpoenas *duces tecum* on various non-parties, and a notice of deposition of Defendant QSI pursuant to Rule 30(b)(6).  In particular, Lead Plaintiffs served 33 requests for production and 21 requests for admission on Defendants.  Counsel for the parties also engaged in numerous meet-and-confer discussions and exchanged written correspondence in order to address the parties' respective objections and to reach agreement on the scope of document and deposition discovery, including negotiating search terms and custodians and discussing electronically-stored information and other sources of potentially relevant information.  At the time of the Settlement, document discovery was ongoing, and Lead Plaintiffs had obtained more than 350,000 pages of documents produced by Defendants and non-parties, which Lead Counsel reviewed and analyzed.

On May 9, 2018, the parties participated in a full-day, in-person mediation before Gregory P. Lindstrom, Esq., of Phillips ADR.  Following the mediation, the parties continued negotiations under the direction and supervision of Mr. Lindstrom.

1   The parties ultimately accepted the mediator's "double-blind" recommendation and

2   reached an agreement in principle to settle all claims asserted in this Litigation for

3   $19,000,000.00 in cash.

4         When settlement was reached, Defendants' petition for a writ of certiorari to the

5   Supreme Court was pending.   On May 18, 2018, pursuant to the parties' joint

6   stipulation, the Court stayed all proceedings in the underlying litigation pending

7   submission of this motion for preliminary approval of the Settlement.  ECF No. 91.

8   On June 8, 2018, the parties requested the Supreme Court defer action on the pending

9   petition for a writ of certiorari until its next scheduled conference on September 24,

10   2018, in light of the parties' agreement to settle the Litigation.

11         In sum, Lead Plaintiffs and Lead Counsel were well-informed about the

12   strengths and weaknesses of their claims, as well as the risks of continued litigation,

13   and had a strong foundation for negotiating the Settlement.

14   **III.   SETTLEMENT NEGOTIATIONS**

15         As noted above, on May 9, 2018, the parties participated in a full-day, in-person

16   mediation session before Mr. Lindstrom, an independent and highly experienced

17   neutral.   Mr. Graves, the Deputy Director of Operations for ATRS, personally

18   attended the mediation and participated in all discussions and decision-making.

19   Likewise, a representative of Lead Plaintiff Miami was available by phone for

20   consultation with counsel.  While the parties were unable to resolve the matter during

21   the formal mediation session, the parties continued to work with Mr. Lindstrom

22   thereafter, continued their negotiations, and ultimately accepted the mediator's

23   settlement proposal to resolve the Litigation for $19,000,000.00.  All negotiations

24   were at arm's-length and well-informed.

25         As set forth in detail below, the parties disagreed with respect to numerous

26   issues, including: (i) whether the alleged misstatements made or facts allegedly

27   omitted by Defendants were material, false, misleading, or actionable; (ii) whether the

28   Lead Plaintiffs could prove that Defendants acted with scienter; (iii) whether

Defendants' statements were protected by the PSLRA Safe Harbor; (iv) whether the market price for QSI's common stock was artificially inflated during the Class Period; (v) whether Defendant Plochocki's stock sales violated the federal securities laws; and (vi) whether any of the alleged inflation and/or subsequent declines in QSI's stock price were proximately caused by the alleged fraud.  These disputed issues and related points and authorities were addressed in detail during the parties' in-person mediation session with Mr. Lindstrom, which concluded without resolving the matter.  However, the parties continued their negotiations thereafter through Mr. Lindstrom, which culminated in a mediator's recommendation to settle the Litigation for $19,000,000.00 that both parties accepted.

## IV.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

The Ninth Circuit maintains a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Johnson v. General Mills, Inc.*, 2013 WL 3213832, at \*2 (C.D. Cal. June 17, 2013) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)) (citations omitted); *see also Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989) (noting the policy of the federal courts is to encourage settlement before trial).  Moreover, courts should defer to "'the private consensual decision of the parties to settle'" and advance the "overriding public interest in settling and quieting litigation." *Id*. at 1229 (quoting *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) and *Rodriguez v. W. Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Federal Rule of Civil Procedure 23(e) requires court approval of any proposed settlement of a class action.  Judicial review of a proposed class action settlement consists of a two-step process: (1) preliminary approval, and (2) a subsequent settlement fairness hearing.  *See, e.g.*, *Lewis v. Green Dot Corp.*, 2017 WL 4785978, at \*7 (C.D. Cal. June 12, 2017).  "In reviewing the proposed settlement, the Court need not address whether the settlement is ideal or the best outcome, but only whether

the settlement is fair, adequate, free from collusion and consistent with Plaintiff's fiduciary obligations to the class." *Hopson v. Hanesbrands Inc.*, 2008 WL 3385452, at \*2 (N.D. Cal. Aug. 8, 2008).

In the first step, the Court makes a preliminary evaluation of the fairness of the settlement before directing that notice be given to the class. Preliminary approval is appropriate if "(1) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls with[in] the range of possible approval." *Dilts v. Penske Logistics, LLC*, 2014 WL 12515159, at \*2 (S.D. Cal. July 11, 2014). To grant preliminary approval of a class action settlement, the court need only find that the settlement is within "the range of reasonableness" to justify providing notice of the settlement to class members and scheduling a final approval hearing. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007).

Thus, at this point, the Court need not answer the ultimate question: whether the Settlement is fair, reasonable, and adequate. When the Court makes that ultimate determination at a later point, after Class Members have received notice and an opportunity to be heard, the Court will be asked to review the following factors: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993), quoting *Officers for Justice v. Civil Serv. Comm'n of City and Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)).

Here, Lead Plaintiffs request only that the Court take the first step in the settlement approval process and grant preliminary approval of the Settlement such that

notice of the Settlement can be sent to the Class.  As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement supported by detailed declarations, the factors considered by courts in granting final approval of class action settlements show that this Settlement is well within the range of possible approval, and therefore warrants preliminary approval.

### A.  The Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel

Courts give considerable weight to the opinion of experienced and informed counsel in evaluating a proposed class action settlement.  *See*, *e.g.*, *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1039 (S.D. Cal. 2017).  Accordingly, "a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."  MANUAL FOR COMPLEX LITIGATION §30.42, at 240 (3d ed. 1995); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.").  "A settlement is presumed to be fair if reached in arms-length negotiations after relevant discovery has taken place."  *Pataky v. Brigantine, Inc.*, 2018 WL 3020159, at *3 (S.D. Cal. June 18, 2018) (citing *Cohorst v. BRE Prop., Inc.*, 2011 WL 7061923, *12 (S.D. Cal. Nov. 14, 2011)); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'").

As noted above, the Settlement was achieved only after an all-day, in-person mediation session, followed by additional arm's-length negotiations, overseen by an experienced mediator.  As part of those discussions, Lead Counsel and Defendants' Counsel prepared and presented several submissions concerning, among other things, their respective views regarding the merits of the Litigation, including the evidence

1    adduced during discovery, Defendants' defenses, and issues relating to damages.

2    After intensive back-and-forth negotiations, the parties reached an agreement in

3    principle to settle the Litigation for $19,000,000.00 in accordance with the mediator's

4    recommendation.

5           In addition, the parties and their counsel were informed and knowledgeable

6    about the strengths and weaknesses of the case prior to reaching the agreement to

7    settle.  Lead Plaintiffs had conducted an extensive investigation prior to drafting and

8    filing the Amended Complaint, which included interviews with former QSI employees

9    and a thorough review of publicly available information; had briefed Defendants'

10   motion to dismiss, Lead Plaintiffs' motion for reconsideration, Defendants' appeal to

11   the Ninth Circuit, and Defendants' petition for a writ of certiorari to the Supreme

12   Court; had consulted with their damages and loss causation expert; had reviewed and

13   analyzed over 350,000 pages of documents produced by the Defendants and third

14   parties in discovery, as well as numerous transcripts of depositions taken in related

15   litigation[3]; and had the benefit of the parties' mediation submissions setting forth their

16   arguments on liability, loss causation, and damages.

17          As a result, Lead Plaintiffs and Lead Counsel had a solid basis for assessing the

18   strength of the Class's claims and Defendants' defenses when they entered into the

19   Settlement.  Lead Counsel have decades of experience prosecuting securities class

20   actions, as numerous courts around the country have recognized.  *See* Firm Resumes,

21   previously filed as ECF No. 14-4 at 2-67 (RGRD) and ECF No. 8-1 at 15-66

22   (Bernstein Litowitz).  Additionally, Lead Plaintiffs are institutional investors who

23   oversaw the Litigation and authorized the Settlement.

24          Accordingly, this Court should give considerable weight to Lead Counsel's

25   judgment that this Settlement is in the best interests of the Class, especially where the

26   settlement process was supervised by Mr. Lindstrom, an experienced mediator.

27   ---
28   [3]    *Hussein v. Quality Sys., Inc., et al.*, Case No. 30-2013-00679600-CU-NP-CJC
     (Super. Ct. Cal., Cty. of Orange).

Courts have recognized that "'[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive'" and "weighs in favor of preliminary approval." *Pederson v. Airport Terminal Servs.*, 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018) (quoting *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)); *see also Kmiec v. Powerwave Techs., Inc.*, 2015 WL 12914343, at *5 (C.D. Cal. Dec. 4, 2015) (same). Here, Mr. Lindstrom played an active role in exploring with the Parties the relevant issues, including the merits of Lead Plaintiffs' claims and Defendants' numerous affirmative defenses, the discovery conducted to date, as well as the risks of continued litigation and Defendants' pending writ petition. Moreover, the fact that the Settlement Amount, $19,000,000.00, was recommended by the mediator and accepted "double-blind" (*i.e.*, without knowing the other party's response) by the parties further supports a finding of non-collusive negotiations and reasonableness. *See, e.g.*, *Roberti v. OSI Sys. Inc.*, 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8, 2015) (approving settlement reached after parties accepted mediator's "double-blind Mediator's Recommendation").

## B. The Substantial Benefits for the Class, Weighted Against the Litigation Risks, Support Preliminary Approval

Defendants have agreed to settle this Litigation for $19,000,000.00 in cash. This substantial recovery provides a significant and immediate benefit to the Class, especially in light of the risks posed by continued litigation. While Lead Plaintiffs were prepared to continue litigating and eventually go to trial in their case against Defendants, and remain confident in their ability to ultimately prove their claims, further litigation and a trial is always a risky proposition. *See, e.g.*, *Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (a settlement agreement's "elimination of risk, delay, and further expenses weighs in favor of approval"). Indeed, complex securities fraud class actions such as this one present myriad risks that plaintiffs must overcome in order to ultimately secure a recovery. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of

defendants where plaintiff failed to establish a triable issue on loss causation); *In re Scientific Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1376 (N.D. Ga. 2010) (granting summary judgment where plaintiffs failed to "disentangle" fraud- and non-fraud-related causes of losses); *In re Neopharm, Inc. Sec. Litig.*, 705 F. Supp. 2d 946, 966 (N.D. Ill. 2010) (granting partial summary judgment where plaintiffs failed to prove material falsity or scienter); *In re Zonagen, Inc. Sec. Litig.*, 322 F. Supp. 2d 764, 783 (S.D. Tex. 2003) (granting summary judgment where plaintiffs failed to establish loss causation). While plaintiffs must prove all elements of their claims to prevail, defendants need only succeed on one defense to potentially defeat the entire action. *See*, *e.g.*, *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1275 (S.D. Cal. 2010) (granting summary judgment and dismissing action with prejudice, finding "[b]ecause loss causation is an element Plaintiffs must prove to succeed on either of their two causes of action, dismissal of both claims is appropriate"); *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1295 (N.D. Okla. 2007), *aff'd sub nom. In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130 (10th Cir. 2009) ("Because summary judgment is appropriate on the issues of loss causation and damages, plaintiffs cannot establish the essential elements of their §10(b) and Rule 10b–5 claim and therefore cannot prevail on their claims against any of the defendants.").

Although Lead Plaintiffs and their counsel believe their case to be strong, they acknowledge that Defendants advanced several formidable arguments disputing liability and damages. Moreover, Defendants continued to challenge the sufficiency of Lead Plaintiffs' Amended Complaint. Here, the Court granted with prejudice Defendants' motion to dismiss the Amended Complaint. *In re Quality Sys., Inc. Sec. Litig.*, 60 F. Supp. 3d 1095, 1098 (C.D. Cal. 2014), *rev'd and remanded*, 865 F.3d 1130 (9th Cir. 2017). Lead Plaintiffs appealed that decision and, on July 28, 2017, the Ninth Circuit Court of Appeals issued an opinion, reversing and remanding the case to this Court. *Quality Sys.*, 865 F.3d at 1136. However, on January 26, 2018, Defendants filed their petition for a writ of certiorari to the Supreme Court. On

1   March 26, 2018, Lead Plaintiffs filed their opposition to Defendants' petition and, on

2   April 10, 2018, Defendants filed their reply.  Accordingly, at the time the Settlement

3   was reached, Defendants' petition remained pending, adding to the risk of further

4   delay, erosion, or termination of the Litigation altogether.

5        Defendants raised numerous merits-based challenges disputing the falsity and

6   materiality of their alleged misstatements.  Defendants maintained that at least seven of

7   the alleged misstatements were "free-standing" forward-looking statements protected

8   by the PSLRA safe harbor and, therefore, not actionable under the Ninth Circuit's

9   decision.  *Quality Sys.*, 865 F.3d 1130.  Additionally, Defendants challenged whether

10  certain other alleged misstatements had a "price impact" – *i.e.*, inflated QSI's stock

11  price under the Supreme Court's decision in *Halliburton Co. v. Erica P. John Fund,*

12  *Inc.*, 134 S. Ct. 2398, 2416 (2014) ("Price impact is [] an essential precondition for any

13  Rule 10b-5 class action.").  Defendants further argued that the evidence would not

14  support a finding that the alleged misstatements were made with the requisite scienter –

15  "intentionally or with deliberate recklessness."  *Zucco Partners, LLC v. Digimarc*

16  *Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).  Finally, even if Lead Plaintiffs established

17  liability, the parties would have also hotly contested loss causation and damages.

18  Defendants would continue to argue that the alleged corrective disclosures on May 7,

19  May 8, May 10, and July 26, 2012, were not "corrective" because they did not reveal

20  that any alleged misstatement was false and misleading when made.  Each of these

21  issues would have been heavily contested if the Litigation continued and each presented

22  significant obstacles to Lead Plaintiffs' success at summary judgment or trial.  *See*, *e.g.*,

23  *Weeks v. Kellogg Co.*, 2013 WL 6531177, at *13 (C.D. Cal. Nov. 23, 2013) ("The fact

24  that this issue, which is at the heart of plaintiffs' case, would have been the subject of

25  competing expert testimony suggests that plaintiffs' ability to prove liability was

26  somewhat unclear; this favors a finding that the settlement is fair.").

27       Moreover, Lead Plaintiffs would need to prevail on all matters at class

28  certification, summary judgment and pretrial motions, trial, and subsequent appeals, a

process that could possibly extend for years.  Settlement is favored where, as here, the case is "'complex and likely to be expensive and lengthy to try'" and presents numerous risks beyond the "'inherent risks of litigation.'"  *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017) (quoting *Rodriguez*, 563 F.3d at 966 and *Torrisi*, 8 F.3d at 1376).

The Settlement balances the risks, costs, and delay inherent in complex cases evenly with respect to all parties.  Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. Lead Plaintiffs respectfully submit that, considering the risks of continued litigation and the time and expense which would be incurred to prosecute the Litigation through a trial, the $19,000,000.00 Settlement represents a meaningful recovery that is in the best interests of the Class.

## C.   The Stage of the Proceedings at Which the Settlement Was Achieved Supports Preliminary Approval

The stage of the proceedings also supports preliminary approval of the Settlement.  As will be further detailed in Lead Plaintiffs' final approval papers and supporting declarations, Lead Plaintiffs' decision to enter into the Settlement was based on their thorough understanding of the strengths and weaknesses of their claims and Defendants' defenses.  This understanding was based on Lead Counsel's diligent prosecution of the Litigation, which included, among other things:  (i) drafting the consolidated complaints subject to the heightened pleading standards of the PSLRA; (ii) conducting an extensive factual investigation, including identifying, contacting and interviewing percipient witnesses with direct knowledge of the facts; (iii) consulting with experts; (iv) opposing Defendants' motion to dismiss; (v) successfully appealing the Court's decision granting Defendants' motion to dismiss with prejudice; (vi) opposing Defendants' writ petition; (vii) conducting extensive fact discovery, which included seeking and obtaining over 350,000 pages of documents from Defendants and various third parties, as well as preparing for a Rule 30(b)(6) deposition

of QSI; (viii) drafting interrogatories and requests for admission; and (ix) preparing for and participating in a mediation session before a mediator with experience in securities class actions and additional settlement negotiations.  There can be no question that, at the time the Settlement was reached, Lead Plaintiffs and their counsel had a clear view of the strengths and weaknesses of the claims and defenses.

Lead Plaintiffs respectfully submit that this is a very good result that further supports the fairness, reasonableness, and adequacy of the Settlement, especially given that Lead Plaintiffs still faced significant hurdles in the prosecution of this Litigation.  The Settlement's $19,000,000.00 cash recovery is well within the range of reasonableness, compares very favorably against other securities class action settlements in recent years,[4] and achieves the certainty of a substantial recovery to the Class.  Thus, preliminary approval is warranted.

## V.   CERTIFICATION OF THE CLASS FOR PURPOSES OF THE SETTLEMENT IS APPROPRIATE

Under the terms of the Stipulation, Defendants have agreed, for the sole purpose of settlement and without adjudication of the merits, to certification of the Class.  As this Court has recognized, "class actions are an effective way to pursue shareholders' actions for securities fraud" and "'[t]he availability of the class action to redress such frauds has been consistently upheld, in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws.'"  *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal.

---

[4]     For example, a study of such settlements by NERA Economic Consulting, a firm that frequently provides damages expertise to defendants in securities cases, reported that since the passage of the PSLRA, between January 1996 and December 2016, median settlement amounts in securities class actions ranged from $3.7 million to $12.3 million.  *See* Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2016 Full-Year Review*, at 31 (NERA Jan. 2017). A recent study by Cornerstone Research reported that approximately 80 percent of post–PSLRA settlements have settled for under $25 million.  *See* Laarni T. Bulan, Ellen M. Ryan and Lauren E. Simmons, *Securities Class Action Settlements: 2017 Review and Analysis*, at 5 (Cornerstone Research 2018).  Within the Ninth Circuit specifically, Cornerstone Research reported that between 2008 and 2017, the median securities class action settlement amount was $8 million.  *Id.* at 20.

2009) (quoting *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975)).

A settlement class, like other certified classes, must satisfy all of the requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation, and one of the three requirements of Rule 23(b). *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997). Lead Plaintiffs submit that the Class satisfies each of the requirements as set forth below.

## A.  The Requirements of Rule 23(a) Are Met

### 1.  Numerosity Is Established

The numerosity requirement is met where the party seeking certification shows the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This does not mean that joinder is impossible, but rather "only that the court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable." *McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, 2017 WL 2257130, at *7 (E.D. Cal. May 23, 2017). "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." *Cooper*, 254 F.R.D. at 634 (citing *Gen. Tel. Co. of N.W., Inc. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980)). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members." *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602-03 (C.D. Cal. 2015); *see also Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473 (C.D. Cal. 2012) (same). Also, numerosity "is generally assumed to have been met in class action suits involving nationally traded securities." *Brown v. China Integrated Energy Inc.*, 2015 WL 12720322, at *14 (C.D. Cal. Feb. 17, 2015) (citations omitted) (alterations in original).

Here, the Class meets the numerosity requirement of Rule 23(a)(1). QSI's common stock traded globally on the NASDAQ at all times during the Class Period under the symbol "QSII." There were approximately 57 million to 59 million shares of QSI common stock outstanding during the Class Period, with more than 375 institutional investors reporting holdings in QSI. In addition, QSI had an average

weekly trading volume of 2.9 million shares during the Class Period.  Thus, the Members of the Class are so numerous that their joinder would be impracticable. "District courts have consistently found a proposed class to be sufficiently numerous in securities fraud cases where 'several million shares of stock were purchased during the class period.'" *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *4 (N.D. Cal. Dec. 22, 2016) (citation omitted), *reconsideration denied*, 2017 WL 4355072 (N.D. Cal. Sept. 29, 2017) (proposed class sufficiently numerous where defendant had between 39 million and 40 million shares of outstanding stock during the class period).  Accordingly, the numerosity requirement is met here.

### 2. Commonality Is Established

Rule 23(a)(2) requires a showing that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Sufficient commonality exists where class members "suffered the same injury" and their claims "depend upon a common contention" that is capable of class-wide resolution. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "This does not, however, mean that every question of law or fact must be common to the class: all Rule 23(a)(2) requires is 'a single significant question of law or fact.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)) (emphases in original). "Commonality, like numerosity, is a prerequisite which plaintiffs generally, and which Plaintiffs here, satisfy very easily." *In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *5 (N.D. Cal. Jan. 13, 2005).

Here, Class Members have suffered a common injury—losses on their investments in QSI common stock—and their claims depend upon numerous common issues capable of class-wide resolution, including: (i) whether Defendants' alleged misrepresentations and omissions violated the Exchange Act; (ii) whether Defendants' alleged misrepresentations and omissions were materially false and misleading; (iii) whether Defendants acted knowingly or recklessly (*i.e.*, with scienter); (iv) whether the individual Defendants controlled QSI and its violations of the

securities laws; (v) whether the market price of QSI's common stock was artificially inflated as a result of Defendants' alleged misrepresentations and omissions; (vi) whether Defendants' misrepresentations and omissions caused Class Members to suffer a compensable loss; and (vii) whether the Members of the Class have sustained damages, and the proper measure of damages.

These issues provide more than sufficient commonality. *See*, *e.g.*, *Brown*, 2015 WL 12720322, at *14 (plaintiffs' allegations that defendant company "made various misstatements in its SEC filings, Registration Statement, press releases, and public statements" are "enough to satisfy the commonality requirement"); *In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("Repeated misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2)."); *Cooper*, 254 F.R.D. at 635 (allegations that defendants violated the Exchange Act, knowingly misrepresented material facts, and caused the defendant company's stock price to be artificially inflated were "common questions" that "form the core of a case for securities fraud" and are "extremely similar to questions of law and fact that other courts have found to be common in previous securities fraud cases").  Accordingly, Lead Plaintiffs have established commonality.

### 3.    Typicality Is Established

Rule 23(a)(3) requires that the proposed class representative's claims be "typical" of the claims of the class. *Brown*, 2015 WL 12720322, at *4. "[T]he Ninth Circuit does not require the named Plaintiffs' injuries to be 'identical with those of the other class members, [but] only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same injurious conduct.'" *Id*. (quoting *Cooper*, 254 F.R.D. at 635).  "The purpose of the typicality requirement is to 'assure that the interest of the named representative aligns with the interests of the class.'" *Intuitive Surgical*, 2016 WL 7435926, at *5 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

1    Here, Lead Plaintiffs' claims are "typical" of other Class Members' claims
2    because they arise out of the same alleged conduct and, like other Members of the
3    Class, they all allege that they purchased QSI common stock during the Class Period
4    at artificially inflated prices due to Defendants' material misstatements and omissions
5    regarding QSI's current and prospective sales and financial condition, and were
6    damaged when the truth emerged.  Thus, both the Lead Plaintiffs and the Class assert
7    the same legal claims, which relate to the adequacy of such public statements and will
8    rely on the same facts and legal theories to establish liability.  *In re Emulex Corp. Sec.*
9    *Litig.*, 210 F.R.D. 717, 719 (C.D. Cal. 2002) (class representative's claims are typical
10   where they arise from the same conduct and are based on the same legal theory as
11   other class members).  Accordingly, the typicality requirement is established.

12       **4.    The Lead Plaintiffs and Lead Counsel Are Adequate**

13       Under Rule 23(a)(4), Lead Plaintiffs must "fairly and adequately protect the
14   interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Under Ninth Circuit precedent,
15   adequacy depends on the resolution of two questions: (1) whether 'the named
16   plaintiffs and their counsel have any conflicts of interest with other class members,'
17   and (2) whether 'the named plaintiffs and their counsel [will] prosecute the action
18   vigorously on behalf of the class.'"  *Brown*, 2015 WL 12720322, at *15 (quoting
19   *Hanlon*, 150 F.3d at 1020).  There is "considerable overlap" between the adequacy and
20   typicality requirements of Rule 23(a).  *Cooper*, 254 F.R.D. at 636; *see also In re*
21   *LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1182 (9th Cir. 2017) (Rule 23(a)(4)'s
22   requirement is "modest.").

23       Lead Plaintiffs and Lead Counsel readily satisfy adequacy.  First, based upon
24   their purchases of QSI common stock during the Class Period and the losses suffered as
25   a result of Defendants' misconduct, Lead Plaintiffs' interests are directly aligned with—
26   rather than "antagonistic" to—the interests of other Class Members, who were injured
27   by the same alleged materially false and misleading statements and omissions as Lead
28   Plaintiffs.  Second, there is no evidence of conflicts of interest between Lead Plaintiffs

and the Class.  *See Juniper Networks*, 264 F.R.D. at 590 (finding that lead plaintiffs were adequate representatives because there was no evidence of conflicts of interest between the lead plaintiffs and the class).  Moreover, Lead Plaintiffs are pension funds, overseeing millions of dollars in assets under management belonging to retired public servants, and are precisely the type of institutional investors that Congress sought to ensure served in leadership roles in securities class actions when enacting the PSLRA. *See* H.R. Rep. No. 104-369, at 34 (1995) (Conf. Rep.), as reprinted in 1995 U.S.C.C.A.N. 730, 733.  Finally, as institutional investors, Lead Plaintiffs are aware of and understand the fiduciary obligations they owe to the Class, and have faithfully executed those duties to date in their supervision and direction of this Litigation.

Lead Plaintiffs have also retained experienced counsel, receive regular status updates from their lawyers, and participate in strategic decisions.  As discussed above, Lead Plaintiffs' selected counsel – Bernstein Litowitz and RGRD – are qualified and experienced, who have a demonstrated record of vigorously prosecuting this Litigation, and satisfy the requirements of Rule 23(g).  By the time the Settlement was reached, Lead Counsel were informed of the strengths and weaknesses of Lead Plaintiffs' claims through their investigation prior to filing the Amended Complaint, briefing related to the sufficiency of the Amended Complaint, and reviewing and analyzing significant discovery.  They applied this knowledge to engage in a rigorous negotiation process.  Lead Counsel are skilled and experienced litigators who were able to develop the case and convince Defendants and their insurers to settle on terms favorable to the Class.  Thus, the adequacy requirement is satisfied.

## B.    The Requirements of Rule 23(b)(3) Are Met

A party seeking class certification must also satisfy one of the three subparts of Rule 23(b). Pursuant to Rule 23(b)(3), the Court must consider: (1) whether questions of law or fact common to class members predominate over questions affecting only individual members; and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

### 1.    Common Questions Predominate

The predominance inquiry of Rule 23(b)(3) asks whether "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "[T]he predominance inquiry focuses on 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *3 (N.D. Cal. Mar. 16, 2016) (citation omitted).   For a class to be sufficiently cohesive, the common questions must "present a significant aspect of the case" and be capable of resolution "for all members of the class in a single adjudication." *Brown*, 2015 WL 12720322, at *15.   "That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate." *Halliburton*, 134 S. Ct. at 2412.  Finally, the predominance requirement is "readily met" in securities class actions. *Amchem*, 521 U.S. at 625; *see also Cooper*, 254 F.R.D. at 632 ("As the Ninth Circuit has so aptly stated, securities cases fit Rule 23 'like a glove.'").

Here, the common questions identified in §V.A.2. above clearly predominate over individual questions because Defendants' alleged fraudulent statements and omissions affected all Class Members in the same manner (*i.e.*, through public statements made to the market and documents publicly filed with the United States Securities and Exchange Commission ("SEC")).  To establish liability under Section 10(b), Lead Plaintiffs must show: "(1) a material misrepresentation or omission of fact; (2) scienter; (3) a connection with the purchase or sale of a security; (4) transaction and loss causation ["transaction causation" being used interchangeably with "reliance"]; and (5) economic loss (damages)." *Cooper*, 254 F.R.D. at 638. Virtually all of these elements involve common questions of law and fact that predominate over individualized issues. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013) (materiality); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812 (2011) (loss causation); *Cooper*, 254 F.R.D. at 640 (all elements).

1   Indeed, "when 'a common nucleus of misrepresentations, material omissions and
2   market manipulations [exists], the common questions predominate over any
3   differences between individual class members with respect to damages, causation or
4   reliance.'" *Cooper*, 254 F.R.D. at 639-40 (citation omitted).

5       In securities fraud class actions, predominance is usually satisfied because the
6   plaintiffs are entitled to rely upon a class-wide presumption of reliance on defendants'
7   misstatements pursuant to the "fraud-on-the-market" doctrine ("FOTM"). The FOTM
8   "holds that 'the market price of shares traded on well-developed markets reflects all
9   publicly available information, and, hence, any material misrepresentations.'"
10  *Halliburton*, 134 S. Ct. at 2408 (affirming and quoting *Basic Inc. v. Levinson*, 485
11  U.S. 224, 246-47 (1988)). Accordingly, whenever an "investor buys or sells stock at
12  the market price, his 'reliance on any public material misrepresentations . . . may be
13  presumed for purposes of a Rule 10b-5 action.'" *Id*. (quoting *Basic*, 485 U.S. at 247).

14      Here, the Court can presume that QSI's common stock traded in an efficient
15  market because it traded on the NASDAQ, "'one of the two largest stock exchanges in
16  the United States, the largest electronic-equity securities trading market in the United
17  States, and one of the largest stock exchanges in the world.'" *Smilovits v. First Solar,*
18  *Inc.*, 295 F.R.D. 423, 430 (D. Ariz. 2013) (quoting *Lumen v. Anderson*, 280 F.R.D. 451,
19  459 (W.D. Mo. 2012)). Indeed, "federal courts are unanimous in their agreement that a
20  listing on the NASDAQ or a similar national market is a good indicator of efficiency."
21  *Todd v. STAAR Surgical Co.*, 2017 WL 821662, at *6 (C.D. Cal. Jan. 5, 2017).

22      Moreover, Lead Plaintiffs further submit there are no significant—let alone
23  predominant—individual issues in this case. Indeed, Lead Plaintiffs submit that it is
24  difficult to discern any liability issues not common to all Class Members. Where, as
25  here, Class Members are subject to the same alleged misrepresentations and
26  omissions, and it is alleged that Defendants' misrepresentations were part of a
27  common course of conduct, common questions predominate. If Lead Plaintiffs and
28  each Class Member were to bring individual actions, they would each be required to

prove the same wrongdoing by Defendants in order to establish liability.

### 2.   A Class Action Is a Superior Method of Adjudicating Lead Plaintiffs' Claims

The class action device is also the superior method for resolving the claims in this Litigation.  Courts have long recognized that the class action is not only a superior method, but also may be the only feasible method to fairly and efficiently adjudicate a controversy involving a large number of purchasers of securities injured by violations of the securities law.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that "most of the plaintiffs would have no realistic day in court if a class action were not available").  "District courts have consistently recognized that the common liability issues involved in securities fraud cases are ideally suited for resolution by way of a class action."  *Cooper*, 254 F.R.D. at 641.  "If united by a common core of facts, and a presumption of reliance on an efficient market, class actions are the superior way to litigate a case alleging violations of securities fraud."  *Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 575 (C.D. Cal. 2012).

Superiority under Rule 23(b)(3) turns on the following four factors: "(1) the class members' interests in individually controlling a separate action; (2) the extent and nature of litigation concerning the controversy already begun by or against class members; (3) the desirability of concentrating the litigation in the particular forum; and (4) the manageability of a class action."  *Juniper Networks*, 264 F.R.D. at 592. This Litigation readily satisfies these factors.  Resolving the claims of all Class Members through a class action is far superior to adjudicating numerous individual suits for the many investors who purchased QSI common stock.  With regard to the first two superiority factors, the expense and burden of litigating each individual claim compared to the potential recovery makes it unlikely that many individuals will attempt to bring such claims.  *Todd*, 2017 WL 821662, at *11.  Nor are Lead Plaintiffs aware of any other securities fraud actions under the Exchange Act currently pending against Defendants related to the Amended Complaint's allegations—indicating that

1   individuals have a minimal interest in commencing separate actions.   Moreover,

2   concentrating the Litigation in this forum is appropriate because QSI maintains its

3   headquarters in this district.   *Hatamian*, 2016 WL 1042502, at *10.   Finally, with

4   respect to managing the Litigation, "this factor involves the same considerations as

5   Rule 23(b)(3)'s predominance requirement," and is satisfied for the reasons set forth

6   above.   *Id*.   A class action is therefore superior here.

7          Further, certification of the Class for settlement purposes is the superior method

8   for resolving the claims of Lead Plaintiffs and the Class. Without the settlement class

9   device, Defendants could not obtain a class-wide release, and therefore would have had

10  little, if any, incentive to agree to the Stipulation.   Moreover, certification of the Class

11  for settlement purposes will allow the Settlement to be administered in an organized and

12  efficient manner.   In light of the foregoing, all of the requirements of Rules 23 are

13  satisfied, and thus, the Court should certify this Class for purposes of the Settlement.

14  **VI.   NOTICE TO THE CLASS IS WARRANTED**

15         As outlined in the agreed-upon proposed Preliminary Approval Order, Lead

16  Counsel will cause the Claims Administrator to notify Class Members of the Settlement

17  by mailing the Notice and Claim Form to all Class Members who can be identified with

18  reasonable effort.   The Notice will advise Class Members of: (i) the pendency of the

19  class action; (ii) the essential terms of the Settlement; and (iii) information regarding

20  Lead Counsel's motion for attorneys' fees and litigation expenses.   The Notice will also

21  provide specifics on the date, time and place of the Settlement Hearing and set forth the

22  procedures, as well as deadlines, for opting out of the Class, for objecting to the

23  Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and

24  litigation expenses, and for submitting a Claim Form.   The proposed Preliminary

25  Approval Order also requires Lead Counsel to cause the Summary Notice to be

26  published once in *The Wall Street Journal* and once over a national newswire service.

27  Lead Counsel will also cause a copy of the Notice and Claim Form to be readily

28  available on the Settlement website created specifically for this Settlement.

1    The form and manner of providing notice to the Class satisfy the requirements

2    of due process, Rule 23, and the PSLRA, 15 U.S.C. §78u-4(a)(7).  The Notice and

3    Summary Notice "explain in easily understood language the nature of the action,

4    definition of the class, class claims, issues and defenses, ability to appear through

5    individual counsel, procedure to request exclusion, and binding nature of a class

6    judgment."  *Sandoval v. Tharaldson Employee Mgmt., Inc.*, 2010 WL 2486346, at *11

7    (C.D. Cal. June 15, 2010); *see also Rodriguez*, 563 F.3d at 962 ("Notice is satisfactory

8    if it 'generally describes the terms of the settlement in sufficient detail to alert those

9    with adverse viewpoints to investigate and to come forward and be heard.'") (citation

10   omitted).  The manner of providing notice, which includes individual notice by mail to

11   all Class Members who can be reasonably identified, represents the best notice

12   practicable under the circumstances and satisfies the requirements of due process and

13   Rule 23.  *See*, *e.g.*, *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir.

14   2017) (combination of mailing and publication "provided 'the best practicable notice

15   under the circumstances'").

16   So that Notice may be provided to the Class, the Court should approve A.B.

17   Data as Claims Administrator as provided in paragraph 8 of the Preliminary Approval

18   Order.  A.B. Data has extensive experience administering class action settlements and

19   is well-qualified to serve as Claims Administrator for the Settlement.

20   **VII.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS**

21   Lead Plaintiffs respectfully submit the following procedural schedule for the

22   Court's review and approval, which summarizes the deadlines in the proposed

23   Preliminary Approval Order.  The dates set forth in the right-hand column are potential

24   dates in the event that preliminary approval is granted on or before July 23, 2018.

25

| **Event** | **Proposed Deadline** | **Potential Date** |
|---|---|---|
| Deadline to commence mailing the Notice and Claim Form to potential Class Members, which date shall be the "Notice Date" (*See* Preliminary Approval Order ¶10) | Not later than 15 business days after entry of Preliminary Approval Order | Aug. 13, 2018 |

| Event | Proposed Deadline | Potential Date |
|---|---|---|
| Deadline for publishing the Summary Notice (*See* Preliminary Approval Order ¶11) | Not later than 7 calendar days after the Notice Date | Aug. 20, 2018 |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (*See* Preliminary Approval Order ¶21) | 35 calendar days prior to the Settlement Hearing | Sept. 26, 2018 |
| Deadline for receipt of exclusion requests or objections (*See* Preliminary Approval Order ¶¶17, 19) | 21 calendar days prior to the Settlement Hearing | Oct. 10, 2018 |
| Deadline for submission of reply papers in support of final approval and attorneys' fees and expenses (*See* Preliminary Approval Order ¶21) | 7 calendar days prior to the Settlement Hearing | Oct. 24, 2018 |
| Settlement Hearing (*See* Preliminary Approval Order ¶2) (to be entered by the Court) | At least 100 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter | Oct. 31, 2018 |
| Deadline for Submitting Claim Forms (*See* Preliminary Approval Order ¶14(a)) | 120 calendar days after the Notice Date | Dec. 11, 2018 |

## VIII. CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter the Settling Parties' agreed-upon form of proposed Preliminary Approval Order, attached hereto as Exhibit 1: (a) certifying the proposed Class for settlement purposes; (b) holding that the manner and form of notice set forth in the Preliminary Approval Order satisfies due process and is the best notice practicable under the circumstances; (c) setting a date for the Settlement Hearing and establishing the deadlines set forth in the Preliminary Approval Order; (d) appointing A.B. Data as Claims Administrator; and (e) appointing Lead Plaintiffs as Class Representatives and Lead Counsel as Class Counsel.

DATED:  July 16, 2018                        Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP

*s/ Robert R. Henssler Jr.*

1  DARREN J. ROBBINS
2  ROBERT R. HENSSLER JR.
   CHRISTOPHER D. STEWART
3  AUSTIN P. BRANE
   MATTHEW J. BALOTTA
4  655 West Broadway, Suite 1900
   San Diego, CA  92101
5  Telephone:  619/231-1058
   619/231-7423 (fax)
6
7  BERNSTEIN LITOWITZ BERGER
     & GROSSMANN LLP
8
9              *s/ David R. Stickney*

10 DAVID R. STICKNEY
   BENJAMIN GALDSTON
11 LUCAS E. GILMORE
   BRANDON MARSH
12 12481 High Bluff Drive, Suite 300
   San Diego, CA  92130
13 Telephone:  858/793-0070
   858/793-0323 (fax)
14        – and –
15 GERALD SILK
   AVI JOSEFSON
16 1285 Avenue of the Americas, 38th Floor
   New York, NY  10019
17 Telephone:  212/554-1400
   212/554-1444 (fax)
18
19 Lead Counsel for Lead Plaintiff Arkansas
20 Teacher Retirement System
21 CYPEN & CYPEN
   STEPHEN H. CYPEN
22 975 Arthur Godfrey Road, Suite 500
   Miami Beach, FL  33140
23 Telephone:  305/532-3200
   305/535-0050 (fax)
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLAUSNER, KAUFMAN, JENSEN
  & LEVINSON
ROBERT D. KLAUSNER
7080 NW 4th Street
Plantation, FL  33317
Telephone:  954/916-1202
954/916-1232 (fax)

Additional Counsel for Lead Plaintiff

**CERTIFICATE PURSUANT TO LOCAL RULE 5-4.3.4**

I, Robert R. Henssler Jr., am the ECF User whose identification and password are being used to file Lead Plaintiffs' Notice of Motion and Unopposed Motion for (I) Preliminary Approval of Class Action Settlement; (II) Certification of the Class; and (III) Approval of Notice to the Class, and Incorporated Memorandum of Law.  In compliance with Local Rule 5-4.3.4(a)(2), I hereby attest that David R. Stickney has concurred in this filing.

DATED:  July 16, 2018                       s/ ROBERT R. HENSSLER JR.
                                            ROBERT R. HENSSLER JR

# Mailing Information for a Case 8:13-cv-01818-CJC-JPR In re Quality Systems, Inc. Securities Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Matthew James Balotta**
  mbalotta@rgrdlaw.com,e_file_sd@rgrdlaw.com,lmix@rgrdlaw.com

- **Austin P Brane**
  abrane@rgrdlaw.com

- **Benjamin Galdston**
  beng@blbglaw.com,denab@blbglaw.com,jessica.cuccurullo@blbglaw.com

- **Kathryn K George**
  kathryn.george@lw.com

- **Lucas E Gilmore**
  lucas.gilmore@blbglaw.com

- **Andrew Gray**
  andrew.gray@lw.com,andrew-gray-3541@ecf.pacerpro.com,#ocecf@lw.com,khadijah-fields-2405@ecf.pacerpro.com,jana.roach@lw.com

- **Robert Russell Henssler , Jr**
  bhenssler@rgrdlaw.com,e_file_sd@rgrdlaw.com,tjohnson@rgrdlaw.com

- **Michele D Johnson**
  michele.johnson@lw.com,michele-johnson-7426@ecf.pacerpro.com,#ocecf@lw.com,khadijah-fields-2405@ecf.pacerpro.com,jana.roach@lw.com

- **Avi Josefson**
  avi@blbglaw.com

- **Brandon Marsh**
  Brandon.Marsh@blbglaw.com

- **Brian Oliver O'Mara**
  bomara@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Darren J Robbins**
  e_file_sd@rgrdlaw.com

- **Nicholas J Siciliano**
  nicholas.siciliano@lw.com,nicholas-siciliano-5932@ecf.pacerpro.com

- **Gerald H Silk**
  jerry@blbglaw.com

- **Christopher Dennis Stewart**
  CStewart@rgrdlaw.com,e_file_sd@rgrdlaw.com,nhorstman@rgrdlaw.com,tjohnson@rgrdlaw.com,ldeem@rgrdlaw.com

- **David R Stickney**
  davids@blbglaw.com,brandon.marsh@blbglaw.com

- **Jordanna G Thigpen**
  jthigpen@jjllplaw.com,vcassis@jjllplaw.com

- **Peter Allen Wald**
  peter.wald@lw.com,peter-wald-
  7073@ecf.pacerpro.com,#ocecf@lw.com,#sflitigationservices@lw.com,andrew.gray@lw.com

- **Whitney Bruder Weber**
  whitney.weber@lw.com,whitney-weber-2642@ecf.pacerpro.com,#sflitigationservices@lw.com

- **Jeff S Westerman**
  jwesterman@jswlegal.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Stephen          H Cypen**
Cypen and Cypen
975 Arthur Godfrey Road   Suite 500
Miami Beach, FL 33140