ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (168593)
ROBERT R. HENSSLER JR. (216165)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
bhenssler@rgrdlaw.com

BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP
DAVID R. STICKNEY (188574)
BENJAMIN GALDSTON (211114)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: 858/793-0070
858/793-0323 (fax)
davids@blbglaw.com
beng@blbglaw.com

Lead Counsel for Lead Plaintiffs

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| In re QUALITY SYSTEMS, INC. SECURITIES LITIGATION | No. 8:13-cv-01818-CJC-JPR |
| | CLASS ACTION |
| This Document Relates To: | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION |
| ALL ACTIONS. | |

DATE:     November 19, 2018
TIME:     1:30 p.m.
CTRM:     7C
JUDGE:    Honorable Cormac J. Carney

1485878_2

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT.................................................................... 1

II.     PROCEDURAL AND FACTUAL BACKGROUND.................................... 4

III.    THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS .................................................. 6

IV.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ..................................................................... 8

        A.      The Settlement Enjoys a Presumption of Reasonableness Because It Is the Product of Arm's-Length Settlement Negotiations ........................................................................ 8

        B.      The Amount of the Settlement Provides a Favorable Recovery to the Class .................................................................... 10

        C.      The Strength of Lead Plaintiffs' Case, When Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Approval of the Settlement................................ 11

                1.      The Risks of Proving Liability ................................. 13

                2.      The Risks of Proving Loss Causation and Damages............... 15

                3.      The Risks of Defendants' Supreme Court Petition ................. 16

        D.      The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement.......................................... 17

        E.      Lead Plaintiffs Had Sufficient Information to Determine the Propriety of Settlement ....................................................... 18

        F.      The Recommendations of Experienced Counsel After Extensive Litigation and Arm's-Length Settlement Negotiations Favor the Approval of the Settlement ................................................ 19

        G.      Reaction of the Class Supports Approval of the Settlement ............. 20

V.      THE PLAN OF ALLOCATION IS FAIR AND REASONABLE............... 21

VI.     CONCLUSION ..................................................................... 21

1485878_2

# TABLE OF AUTHORITIES

**Page**

## CASES

*Beecher v. Able,*
  575 F.2d 1010 (2d Cir. 1978) ...................................................................... 21

*Brotherton v. Cleveland,*
  141 F. Supp. 2d 894 (S.D. Ohio 2001) .......................................................... 20

*Bryant v. Avado Brands, Inc.,*
  100 F. Supp. 2d 1368 (M.D. Ga. 2000),
  *rev'd on other grounds and remanded sub nom.*
  *Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001) ...................................... 12

*Class Plaintiffs v. Seattle,*
  955 F.2d 1268 (9th Cir. 1992) ................................................................. 6, 21

*DSAM Global Value Fund v. Altris Software,*
  288 F.3d 385 (9th Cir. 2002) ........................................................................ 12

*Ellis v. Naval Air Rework Facility,*
  87 F.R.D. 15 (N.D. Cal. 1980),
  *aff'd*, 661 F.2d 939 (9th Cir. 1981) ............................................................... 7

*Glickenhaus & Co. v. Household Int'l, Inc.,*
  787 F.3d 408 (7th Cir. 2015) ........................................................................ 18

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) .................................................................. 8, 20

*In re BankAtlantic Bancorp, Inc.,*
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ................................................ 18

*In re Chicken Antitrust Litig. Am. Poultry,*
  669 F.2d 228 (5th Cir. 1982) ........................................................................ 21

*In re Heritage Bond Litig.,*
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................ 8, 21

*In re Ikon Office Sols., Inc.,*
  194 F.R.D. 166 (E.D. Pa. 2000) ........................................................ 12, 17, 21

1

2                                                                                                    **Page**

3
*In re Mego Fin. Corp. Sec. Litig.*,
4        213 F.3d 454 (9th Cir. 2000)...................................................................... 12, 18

5
*In re Omnivision Techs.*,
6        559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................. 6, 11, 19, 21

7
*In re Oracle Corp. Sec. Litig.*,
8        627 F.3d 376 (9th Cir. 2010) ................................................................................ 13

9
*In re Pac. Enters. Sec. Litig.*,
10       47 F.3d 373 (9th Cir. 1995) .................................................................................. 6

11
*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
         460 F.3d 1217 (9th Cir. 2006) .............................................................................. 6
12

13
*In re Quality Sys., Inc. Sec. Litig.*,
         865 F.3d 1130 (9th Cir. 2017)............................................................................... 5
14

15
*In re Telik, Inc. Sec. Litig.*,
         576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................. 14
16

17
*In re Tyco Int'l, Ltd.*,
         535 F. Supp. 2d 249 (D.N.H. 2007) ..................................................................... 15
18

19
*In re Veeco Instruments Inc. Sec. Litig.*,
         2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...................................................... 16
20

21
*In re Warner Commc'ns Sec. Litig.*,
         618 F. Supp. 735 (S.D.N.Y. 1985),
22       *aff'd*, 798 F.2d 35 (2d Cir. 1986) ....................................................................... 16

23
*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
         2011 WL 3352460 (N.D. Cal. Aug. 2, 2011)........................................................ 8
24

25
*Johansson-Dohrmann v. CBR Sys.*,
         2013 WL 3864341 (S.D. Cal. July 24, 2013)...................................................... 12

26
*Linney v. Cellular Alaska P'ship*,
27       1997 WL 450064 (N.D. Cal. July 18, 1997),
         *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ................................................................... 9
28

1485878_2

1

2                                                                                           **Page**

3

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) ................................................................. 6

*Milstein v. Huck*,
   600 F. Supp. 254 (E.D.N.Y. 1984) ......................................................... 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ....................................... 8, 10, 17, 19

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ...................................................... *passim*

*Pompano Beach Police & Firefighters' Ret. Sys. v.*
   *Las Vegas Sands Corp.*,
   732 F. App'x 543 (9th Cir. 2018) ......................................................... 13

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................... 7, 9, 19

*Satchell v. Fed. Express Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ....................................... 9

*Thacker v. Chesapeake Appalachia, L.L.C.*,
   695 F. Supp. 2d 521 (E.D. Ky. 2010), *aff'd sub nom.*
   *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
   636 F.3d 235 (6th Cir. 2011) .............................................................. 20

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................. 7

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ................................................................. 6

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1485878_2

Page

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 1 ................................................................................................ 6
    Rule 23 ............................................................................................. 21
    Rule 23(a) .......................................................................................... 6
    Rule 23(b)(3) ...................................................................................... 6
    Rule 23(e) ....................................................................................... 1, 6

**SECONDARY AUTHORITIES**

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
    *Securities Class Action Settlements: 2016 Review and Analysis*
    (Cornerstone Research 2017) ........................................................... 11

Stefan Boettrich & Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation:*
    *2017 Full-Year Review*
    (NERA 2018) ................................................................................... 11

1485878_2

## I.  PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs City of Miami Fire Fighters' and Police Officers' Retirement Trust ("Miami") and Arkansas Teacher Retirement System ("ATRS") (collectively, "Lead Plaintiffs") submit this memorandum in support of their motion for: (a) final approval of the Settlement of this securities class action for $19 million in cash, and (b) approval of the Plan of Allocation.  The terms of the Settlement are set forth in the Stipulation of Settlement, dated July 16, 2018 ("Stipulation"), which was previously filed with the Court.[1]  ECF No. 95-2.

This Settlement represents a very good recovery for the Class, particularly in light of Quality Systems, Inc.'s ("QSI" or the "Company") petition for a writ of certiorari pending before the United States Supreme Court and the considerable expense, delay, and risks posed by continued litigation, including obtaining class certification, successfully opposing summary judgment, prevailing at trial, and litigating inevitable post-trial motions and appeals.  As discussed below and in the accompanying Joint Declaration of Robert R. Henssler Jr. and Benjamin Galdston in Support of: (A) Lead Plaintiffs' Motion for Final Approval of Settlement and Approval of Plan of Allocation, and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Joint Decl."), this Litigation has been aggressively litigated for more than four years, including a successful appeal to the United States Court of Appeals for the Ninth Circuit.

Among other things, Lead Counsel conducted a thorough investigation and drafted a detailed 76-page Amended Complaint, opposed Defendants' motion to dismiss the Amended Complaint and sought reconsideration of the dismissal, successfully appealed the dismissal to the Ninth Circuit, zealously sought to have

---

[1]  All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation.

1    relevant state court records unsealed, pursued and negotiated discovery leading to

2    the production of over 350,000 pages of documents by Defendants and non-parties,

3    litigated two hard-fought discovery disputes, fully briefed Defendants' petition for a

4    writ of certiorari, and mediated a resolution of the case with the assistance of

5    Gregory P. Lindstrom, Esq., of Phillips ADR, a respected and experienced mediator.

6    *See generally* Joint Decl.  Therefore, Lead Plaintiffs and Lead Counsel were well

7    informed about the strengths and weaknesses of their case when they agreed to settle

8    this action for $19 million.   Indeed, the significant risks involved in taking this

9    Litigation further and through trial, when measured against the immediate benefit of

10   the Settlement, justify approval of this Settlement.[2]

11        The Settlement is also fully supported by the Lead Plaintiffs, who are large,

12   sophisticated institutional investors of the type favored by Congress when passing

13   the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Lead Plaintiffs

14   have closely monitored and participated in this Litigation, including engaging with

15   Lead Counsel regarding the Litigation strategy, reviewing correspondence and court

16   filings, and identifying and providing relevant information during discovery, and

17   recommend that the Settlement be approved.  *See* accompanying Declaration of

18   Ornel N. Cotera in Support of: (A) Lead Plaintiffs' Motion for Final Approval of

19   Settlement; and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and

20   Expenses ("Cotera Decl."), ¶¶2-4; Declaration of Arkansas Teacher Retirement

21   Systems in Support of (A) Lead Plaintiffs' Motion for Final Approval of

22   Settlement; (B) Lead Counsel's Motion for an Award of Attorneys' Fees and

23   Reimbursement of Litigation Expenses; and (C) Lead Plaintiff Award ("ATRS

24   Decl."), ¶¶2-4.   Further, Lead Counsel, comprised of firms with extensive

25   experience in prosecuting complex securities class actions, believes that the

26

27   ---
     [2]   This Court's July 30, 2018 Order Granting Preliminary Approval of Class
     Action Settlement and Lifting Stay (the "Notice Order") (ECF No. 96) held that

28   "the benefits provided to the proposed settlement class appropriately balance the
     risks of continued litigation."  *Id.* at 11.

Settlement is a very good result and in the best interests of the Class.  Joint Decl., ¶¶6, 97, 100.

The Notice Order directed that a final approval hearing be held on November 19, 2018.   In accordance with the Notice Order, the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Expenses (the "Notice") and the Proof of Claim and Release Form ("Proof of Claim") were mailed to all Class Members who could be identified with reasonable effort, and as of October 12, 2018, over 61,200 copies have been mailed.  *See* Declaration of Eric J. Miller Regarding Notice Dissemination, Publication, and Report on Requests for Exclusion Received to Date ("Miller Decl."), ¶¶3-9, submitted herewith.  In addition, the Notice, the Proof of Claim, the Stipulation and its Exhibits, the Notice Order, and other documents related to the Litigation were posted on the Settlement website, and pursuant to the Notice Order, a Summary Notice was published in the national edition of *The Wall Street Journal* and over the *PR Newswire* on August 14, 2018.  *Id.*, ¶¶10, 12.

Class Members appear to support the Settlement and Plan of Allocation. While the deadline for objecting is October 29, 2018, to date, not a single Class Member has objected to any aspect of the Settlement or Plan of Allocation.[3]  Nor has any Class Member sought exclusion from the Class.

In light of their informed assessment of the strengths and weaknesses of the claims and defenses asserted, the considerable risks and delay associated with continued litigation and trial, and the favorable Settlement Amount, Lead Plaintiffs and Lead Counsel believe that the Settlement is eminently fair, reasonable, and adequate and provides a very good result for the Class.  Accordingly, Lead Plaintiffs respectfully request that the Court approve this Settlement.  Moreover, the Plan of Allocation, which was developed with the assistance of Lead Plaintiffs'

---

[3]    Should any objections be received, Lead Plaintiffs will address them in their reply memorandum on or before November 12, 2018.

1   damages expert, is fair and reasonable and, therefore, should also be approved by

2   the Court.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

The following is a brief overview of the Litigation.[4]  The initial complaint was filed on November 19, 2013, in the United States District Court for the Central District of California.  On February 4, 2014, the Court appointed Miami and ATRS as Lead Plaintiffs, and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel.  ECF No. 22.  On April 7, 2014, Lead Plaintiffs filed the Amended Complaint for Violations of the Federal Securities Laws (the "Amended Complaint"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, in connection with certain statements regarding, among other things, QSI's sales and financial performance during the Class Period.  ECF No. 26.

On June 20, 2014, Defendants filed their motion to dismiss the Amended Complaint.  ECF No. 29.  On October 20, 2014, after being fully briefed and argued, the Court granted Defendants' motion to dismiss, with prejudice.  ECF No. 39.  Lead Plaintiffs timely sought reconsideration, which the Court denied on January 5, 2015.  ECF No. 46.

On January 30, 2015, Lead Plaintiffs filed their Notice of Appeal with the United States Court of Appeals for the Ninth Circuit.  ECF No. 47.  With the appeal ongoing, Lead Plaintiffs filed a motion to unseal documents and information in the Hussein Litigation pending in California state court on September 2, 2016.  On October 11, 2016, following full briefing and argument, the California state court denied Lead Plaintiffs' motion.

---

[4]    The Court is respectfully referred to the Joint Declaration for a more detailed description of the Litigation, Lead Counsel's efforts on behalf of the Class, the risks of further litigation, and the substantial benefits obtained by this Settlement.

- 4 -

On July 28, 2017, after Lead Plaintiffs' appeal was fully briefed and argued, the Ninth Circuit issued its opinion reversing the District Court's dismissal of the Amended Complaint and remanding the case. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017). Defendants filed a petition for rehearing *en banc*, which the Ninth Circuit denied on September 29, 2017. The Ninth Circuit issued its formal mandate to the District Court on October 10, 2017.

On October 19, 2017, Lead Plaintiffs served their First Request for Production of Documents to Defendants, containing 33 requests. Between October 25, 2017 and December 8, 2017, Lead Plaintiffs also served 32 subpoenas to non-parties.[5] Lead Plaintiffs served their first requests for admission to all Defendants, consisting of 21 requests, on March 23, 2018.

On January 26, 2018, Defendants filed their petition for a writ of certiorari with the U.S. Supreme Court, seeking reversal of the Ninth Circuit's opinion. Lead Plaintiffs filed their opposition to the writ petition on March 22, 2018. On April 10, 2018, Defendants filed their reply in support of their writ petition.

On May 9, 2018, the parties participated in a full-day, in-person mediation with Gregory P. Lindstrom, Esq., of Phillips ADR. The next day, the parties accepted a double-blind mediator's recommendation and reached an agreement-in-principle to settle the case. Subsequently, the parties continued negotiations resulting in the terms and conditions set forth in the Stipulation. ECF No. 95-2. Lead Plaintiffs moved for preliminary approval of the Settlement, as well as class certification for settlement purposes and approval of class notice, on July 16, 2018. ECF No. 95. The Court entered the Notice Order on July 30, 2018. ECF No. 96.

---

[5]   Lead Plaintiffs subpoenaed five additional non-parties between January 29, 2018 and April 30, 2018.

- 5 -

1485878_2

### III.   THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS[6]

It is well-established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class actions in particular readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the complexity and typical length of the litigation. Indeed, the Ninth Circuit has recognized that "[w]hen reviewing complex class action settlements, we have a 'strong judicial policy that favors settlements.'" *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (quoting *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)); *see also In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits.").[7] It is also beyond question that "the public has an overriding interest in securing 'the just, speedy, and inexpensive determination of every action.'" *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006); Fed. R. Civ. P. 1. And this too is particularly true in class action lawsuits. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

In deciding whether to approve a proposed settlement of a class action, the court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). *See also Pac. Enters.*, 47 F.3d at 377; *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). The Ninth Circuit has provided certain factors which may be considered in evaluating whether a settlement meets this standard:

---

[6]   The Notice Order contained a full analysis of the Rule 23(a) and Rule 23(b)(3) requirements for class certification, and found that each of the required elements were met. There have been no circumstances or events to undermine those findings; therefore, the Court is requested to incorporate those findings and finally certify the Class for settlement purposes.

[7]   Citations are omitted throughout unless otherwise indicated.

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625; *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). "The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

Approval of a class action settlement "is left to the sound discretion of the trial judge," and approval "will be reversed only for abuse of that discretion." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *accord Torrisi*, 8 F.3d at 1375. At the same time, the Ninth Circuit provides guidance as to the limits of the inquiry to be made by the court:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

*Officers for Justice*, 688 F.2d at 625 (emphasis in original). In sum, the Ninth Circuit "has long deferred to the private consensual decision of the parties." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Taking these policies into consideration, courts have taken a flexible approach toward approval of class action settlements, recognizing that the settlement process involves the exercise of judgment and that the concept of

- 7 -

"reasonableness" can encompass a broad range of results.  "'In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'"  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  "As the Ninth Circuit has noted, 'Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion.'"  *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 WL 3352460, at *4 (N.D. Cal. Aug. 2, 2011) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998)).

When examined under the applicable criteria, this Settlement is a very good result for the Class, particularly in light of the remaining challenges of class certification, a potential writ of certiorari from the Supreme Court, summary judgment, trial, and the inevitable post-trial motions and appeals.  The Settlement achieves a substantial, certain and immediate recovery for the Class and is superior to the possibility that were the Litigation to proceed to trial, there could be no recovery at all.  Here, it is the considered judgment of highly experienced counsel after extensive hard-fought litigation, substantial discovery, and settlement negotiations that the Settlement is not only a very good result for the Class but likely the best result under the circumstances and should be approved.  As discussed below, an analysis of the relevant factors demonstrates that the Settlement merits this Court's final approval.

## IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.   The Settlement Enjoys a Presumption of Reasonableness Because It Is the Product of Arm's-Length Settlement Negotiations

"A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced counsel after meaningful discovery.'"  *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal.

June 10, 2005); *see also Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at \*5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery [has] taken place create a presumption that the agreement is fair.").  Further, the Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez*, 563 F.3d at 965.  This Settlement was reached after extensive pre-trial proceedings and arm's-length negotiations by experienced counsel on both sides, each with a well-developed understanding of the strengths and weaknesses of each party's respective claims and defenses, and under the supervision of an experienced mediator.  Accordingly, the Settlement is entitled to a presumption of correctness and fairness.

As detailed in the Joint Declaration, the parties exchanged evidence-based mediation briefs and attended a full-day mediation with Gregory P. Lindstrom, Esq., of Phillips ADR, on May 9, 2018.  Joint Decl., ¶¶81-83.  While the parties negotiated in good faith at the mediation, they were unable to reach a resolution. *See id.*, ¶83.  The following day, the parties accepted Mr. Lindstrom's "double-blind" recommendation to resolve the Litigation for $19 million.  *Id.*, ¶84.  Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *See, e.g.*, *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at \*4 (N.D. Cal. Apr. 13, 2007).

Lead Counsel has many years of experience in litigating securities class actions and has negotiated hundreds of settlements of these types of cases, which settlements have been approved by courts across the country.  *See, e.g.*, accompanying Declaration of Robert R. Henssler Jr. Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."), Ex. G; www.rgrdlaw.com; Declaration of Benjamin Galdston Filed on Behalf of Bernstein Litowitz Berger &

- 9 -

Grossmann LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Bernstein Litowitz Decl."), Ex. F; www.blbglaw.com.  Defendants are also represented by highly capable and experienced lawyers from Latham & Watkins LLP who zealously represented their clients.  The Settlement was reached after arm's-length negotiations by experienced counsel on both sides, each with a well-developed understanding of each party's respective claims and defenses. These facts established that the Settlement is the result of hard-fought negotiations and is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice*, 688 F.2d at 625.

### B.     The Amount of the Settlement Provides a Favorable Recovery to the Class

"In assessing the consideration obtained by the class members in a class action settlement, '[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *DIRECTV*, 221 F.R.D. at 527 (quoting *Officers for Justice*, 688 F.2d at 628).  "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."  *DIRECTV*, 221 F.R.D. at 527.  "'Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation. . . .'" *Officers for Justice*, 688 F.2d at 624.

Here, the result achieved is substantial.  The Class will receive $19 million, less Court-awarded fees and expenses and the costs of notice and administering the Settlement.  This recovery provides an immediate, tangible, and significant benefit to the Class and eliminates the risk that the Class could recover less than the Settlement Amount, or nothing at all, if the Litigation continued.  Importantly, this recovery far exceeds the median securities settlement as a percentage of estimated damages.  Specifically, the Settlement represents approximately 7%-13% of the

- 10 -

Class' estimated recoverable damages as estimated by Lead Plaintiffs' damages expert, and as much as 22% or more of such estimated damages when taking into account Defendants' challenges to loss causation and materiality.   These percentages greatly exceed the median settlement as a percentage of estimated damages in the Ninth Circuit of 2.2% from 2007 through 2016.  *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2016 Review and Analysis* at 23, Appendix 3 (Cornerstone Research 2017).  And according to NERA, "the median ratio of settlements to NERA-defined Investor Losses was 2.6% in 2017."  Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review* at 38 (NERA 2018).[8] Courts may consider such data in evaluating a class action settlement.  *See, e.g.*, *Omnivision*, 559 F. Supp. 2d at 1042 (finding that settlement amount was reasonable in part because it was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

Had this Litigation proceeded, there was a real possibility that the Class would recover a smaller amount – or nothing at all after protracted litigation.  In addition to the risk that Lead Plaintiffs could lose at class certification, summary judgment, or trial, continued litigation could include lengthy and costly appellate practice before the Supreme Court which could ultimately result in Lead Plaintiffs' claims being significantly reduced or even extinguished.  Accordingly, this factor weighs heavily in favor of the Settlement.

## C. The Strength of Lead Plaintiffs' Case, When Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Approval of the Settlement

In determining whether a proposed settlement is fair, reasonable, and adequate, the court should balance against the continuing risks of litigation, the

---

[8]     "NERA's Investor Losses variable is a proxy for the aggregate amount that investors lost from buying the defendant's stock, rather than investing in the broader market during the alleged class period." *Id.* at 11.

1485878_2

benefits afforded to the class, and the immediacy and certainty of a substantial recovery. *Johansson-Dohrmann v. CBR Sys.*, 2013 WL 3864341, at *4 (S.D. Cal. July 24, 2013) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)).  Securities actions pose unique risks and have "become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Sols., Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000) ("An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard."), *rev'd on other grounds and remanded sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).

Although Lead Plaintiffs survived Defendants' attacks on the pleadings by appealing to the Ninth Circuit, the pleadings remained at risk as Defendants' certiorari petition was pending before the Supreme Court at the time the parties reached agreement to settle.  Moreover, had Lead Plaintiffs' claims proceeded to trial, Lead Plaintiffs faced serious obstacles to recovery, both with respect to liability and damages.  The claims asserted in the Litigation on behalf of the Class were based on Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated by the U.S. Securities and Exchange Commission.  To prevail on their Section 10(b) claims, Lead Plaintiffs bear the burden of proving: (a) a misstatement or omission; (b) of material fact; (c) made with scienter; (d) on which plaintiffs relied; and (e) that caused plaintiffs' damages.  *DSAM Global Value Fund v. Altris Software*, 288 F.3d 385, 388 (9th Cir. 2002).  Thus, Lead Plaintiffs would have to prove that Defendants were responsible for material misstatements or omissions of fact, that the Class relied on those statements, that Defendants acted with the requisite scienter, and that the Class suffered damages as a result of Defendants' conduct.

While Lead Counsel believes that the claims have significant merit, it recognizes that Lead Plaintiffs faced numerous risks and uncertainties.  For

- 12 -

instance, adding to the difficulty of proving Lead Plaintiffs' claims was the fact that the action was tied up on appeal during a significant period, during which the PSLRA stay of discovery was in place. The memories of percipient witnesses, including current and former QSI employees, likely faded over that time. Moreover, Lead Counsel was well aware that many other similar actions lose on dispositive motions, at trial, or on appeal. *See, e.g.*, *Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543, 547 (9th Cir. 2018) (affirming summary judgment in favor of defendants where plaintiffs failed to establish loss causation); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (same). The Settlement recognizes the risks of complex litigation involving difficult legal and factual issues. As discussed herein and in the Joint Declaration, the risks of continued litigation, when weighed against the substantial and certain recovery for the Class, confirms the reasonableness of the Settlement.

### 1. The Risks of Proving Liability

After nearly five years of litigation, including the review and analysis of hundreds of thousands of pages of documents and conducting witness interviews, Lead Plaintiffs believed that they had obtained substantial evidence supporting their claims and that further discovery would uncover additional supporting evidence. But, as discussed above and in the Joint Declaration, this Litigation involves substantial risks in proving liability. Indeed, Defendants' arguments in motion practice and settlement negotiations made it clear that the parties held divergent views regarding the factual and legal issues presented, the evidence, and the strengths and weakness of the parties' respective claims and defenses. Under these circumstances, there was no guarantee that all claims would proceed to trial and a jury would find in Lead Plaintiffs' favor. Lead Plaintiffs carefully considered these and related risks during the settlement negotiations.

Even before settlement discussions commenced, it was very clear that Defendants did not agree that Lead Plaintiffs would prevail on any of their claims,

- 13 -

1   particularly with respect to falsity and scienter, and there is no question that
2   Defendants would have raised every available argument to avoid an adverse
3   judgment had litigation continued.  The defenses raised by Defendants certainly
4   had the possibility of success, making the ultimate outcome difficult to predict.

5          Defendants not only challenged the falsity and materiality of the alleged
6   misstatements and omissions, but they were also seeking a decision from the
7   Supreme Court that many of these alleged misstatements were in fact inactionable
8   as forward-looking statements protected by the PSLRA's safe harbor provisions.
9   Joint Decl., ¶¶50-51.  In addition, at summary judgment, Defendants would likely
10  focus on alleged misstatements that the Ninth Circuit had not specifically
11  addressed and argue that these statements were inactionable. *Id.*, ¶89.  While Lead
12  Counsel believes that the documents produced demonstrate the falsity of
13  Defendants' statements, Defendants' interpretation and understanding of those
14  documents is entirely different, and Lead Plaintiffs' success in establishing falsity
15  and materiality was certainly not guaranteed. *See id.*

16         Lead Plaintiffs also faced a significant challenge in establishing scienter, as
17  "[p]roving a defendant's state of mind is hard in any circumstances." *See In re*
18  *Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008) (granting final
19  approval of $5 million settlement).  Lead Counsel believed that discovery had
20  revealed significant evidence of Defendants' scienter, but Defendants no doubt saw
21  things differently.   Joint Decl., ¶90.   Lead Plaintiffs would point to the
22  circumstances surrounding Defendant Plochocki's sale of QSI stock, including that
23  it was made near the high point of QSI's stock price and involved nearly all of his
24  holdings.  *Id.*  But Defendants would argue that this sale was not suspicious,
25  relying on the fact that Plochocki's only prior sale similarly liquidated around 97%
26  of his QSI holdings in 2008.  *Id.*

27         The specific risks faced by Lead Plaintiffs would be exacerbated by the risks
28  inherent in all shareholder litigation, including the unpredictability of a lengthy and

- 14 -

1   complex jury trial, the risk that witnesses could be unavailable or simply not recall

2   critical facts or that jurors could react to the evidence in unforeseen ways, the risk

3   that a jury could find that some or all of the alleged misrepresentations were not

4   material, and the risk that the jury could find that Defendants believed in the

5   appropriateness of their actions at the time.

6   **2.    The Risks of Proving Loss Causation and Damages**

7   Lead Plaintiffs also faced substantial risk in proving loss causation and

8   damages.  *See In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007)

9   ("Proving loss causation would be complex and difficult.  Moreover, even if the

10  jury agreed to impose liability, the trial would likely involve a confusing 'battle of

11  the experts' over damages.").  In addition to proving falsity and scienter, in order

12  to prevail on their Section 10(b) claims, Lead Plaintiffs would be required to prove

13  that Defendants' allegedly false and misleading statements and omissions inflated

14  the price of QSI stock and the amount of the artificial inflation.

15  Proving loss causation would require that Lead Plaintiffs overcome

16  Defendants' inevitable arguments that the alleged corrective disclosures did not

17  reveal that the alleged misstatements were false or misleading, and that the decline

18  in QSI's stock price was due to some other factor(s).  Joint Decl., ¶91.  If the Court

19  or jury accepted Defendants' argument that other factors, as opposed to the alleged

20  corrective disclosures, had negatively impacted QSI's stock price, the potential to

21  significantly decrease damages was very real.  In addition to these arguments, Lead

22  Plaintiffs would also have to defeat Defendants' likely *Daubert* challenges to Lead

23  Plaintiffs' experts.  *Id.*, ¶92.  Defendants' experts would likely attempt to

24  undermine the loss causation and damages assessments made by Lead Plaintiffs'

25  expert, leading to a costly, unpredictable, and potentially confusing "battle of the

26  experts." *Id.*

27  The reaction of a jury to complex expert testimony is highly unpredictable,

28  and Lead Counsel recognizes the possibility that a jury could be swayed by

- 15 -

convincing experts for the Defendants, and find there were no damages or only a fraction of the amount of damages asserted by Lead Plaintiffs. *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions"), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *10 (S.D.N.Y. Nov. 7, 2007) ("The jury's verdict with respect to damages would depend on its reaction to the complex testimony of experts, a reaction which at best is uncertain.").

In the end, while Lead Counsel believes that reliable and convincing expert testimony can be provided on the damages question, the meaningful and substantial risks presented made the outcome of a trial extremely uncertain. As a result, this factor also weighs in favor of the Settlement.

### 3. The Risks of Defendants' Pending Supreme Court Petition

Significantly, Lead Plaintiffs were not only facing the challenges of successfully prosecuting this action through trial and post-trial motions and appeals, but they were also facing Defendants' petition for a writ of certiorari to the Supreme Court. Joint Decl., ¶50. At the time of the Settlement, Defendants' writ petition was completely briefed. *Id.*, ¶15. In their briefing, Defendants argued the Ninth Circuit's decision reversing dismissal of the Amended Complaint announced a new, incorrect rule that only added to a conflict among the circuits over the proper interpretation and application of the PSLRA's safe harbor for forward-looking statements. *Id.*, ¶¶50-51. Had the Supreme Court decided to grant certiorari, this would not only have led to further delay but also would have risked a severe decrease in the amount of any eventual recovery for the Class, potentially to $0. *See id.*, ¶86.

- 16 -

**D.    The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement**

The immediacy and certainty of a recovery is another factor for the Court to balance in determining whether this proposed Settlement is fair, adequate, and reasonable, as "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Officers for Justice*, 688 F.2d at 626.  In other words,

> [t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, "It has been held proper to take the bird in hand instead of a prospective flock in the bush."

*DIRECTV*, 221 F.R.D. at 526.

As noted above, Defendants demonstrated a commitment to defend this case through and beyond trial, if necessary, and are represented by well-respected and highly capable counsel from Latham & Watkins LLP.  If not for this Settlement, the expense and time of continued litigation would have been substantial.  As the court noted in *Ikon*:

> In the absence of a settlement, this matter will likely extend for . . . years longer with significant financial expenditures by both defendants and plaintiffs.  This is partly due to the inherently complicated nature of large class actions alleging securities fraud: there are literally thousands of shareholders, and any trial on these claims would rely heavily on the development of a paper trial [sic] through numerous public and private documents.

194 F.R.D. at 179.

If this Litigation continued, Lead Plaintiffs' motion for class certification and Defendants' motions for summary judgment and motions to exclude Lead Plaintiffs' experts' testimony would have to be briefed and argued, proposed jury instructions would have to be submitted, and motions *in limine* would have to be filed and argued.  Substantial time and expense would need to be incurred in preparing the case for trial.  The trial itself would have been long, expensive, and

- 17 -

1485878_2

uncertain, and post-trial motions and appeals challenging the jury verdict would be virtually assured. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *6 (S.D. Fla. Apr. 25, 2011). Separately, the Supreme Court could decide to grant certiorari with lengthy and costly proceedings resulting. All of these events and proceedings would add considerably to the expense and duration of the Litigation.

The legal issues presented are complex – proving scienter, causation, and damages – and would involve expert testimony, as discussed above. The Settlement will spare the litigants the significant delay, risk, and expense of continued litigation. Many hours of the Court's time and resources also have been spared. Moreover, even if the Class could recover a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny any recovery for years and further reduce its value. The $19 million settlement, at this juncture, results in an immediate and substantial tangible recovery, without the considerable risk, expense, and delay of summary judgment motions, trial, and post-trial litigation.

**E.   Lead Plaintiffs Had Sufficient Information to Determine the Propriety of Settlement**

In reviewing a class action settlement, the Court may also consider the stage of the proceedings and the discovery thus far completed. *See Officers for Justice*, 688 F.2d at 625; *Mego Fin.*, 213 F.3d at 458. Here, both the knowledge of Lead Counsel and the proceedings themselves have reached a stage where an intelligent evaluation of the strengths and weaknesses of Lead Plaintiffs' case and the propriety of the Settlement could be made. As discussed above and in the Joint Declaration, this Litigation has involved extensive discovery, including the production of over 350,000 pages of documents. Joint Decl., ¶¶4, 59-76. The parties also participated in extensive settlement negotiations, including an all-day, face-to-face mediation session with Mr. Lindstrom in May 2018, where the parties'

1485878_2

1   claims and defenses were fully vetted.  *Id.*, ¶83.  Prior to the mediation, the parties

2   exchanged detailed mediation statements which further highlighted the factual and

3   legal issues in dispute.  *Id.*, ¶¶81-82.  As a result, Lead Counsel was able to assess

4   the strengths and weaknesses of the claims asserted and resolve the Litigation on a

5   highly favorable basis for the Class.

6           **F.      The Recommendations of Experienced Counsel After**
                      **Extensive Litigation and Arm's-Length Settlement**
7                     **Negotiations Favor the Approval of the Settlement**

8           As the Ninth Circuit observed in *Rodriguez*, "[t]his circuit has long deferred

9   to the private consensual decision of the parties" and their counsel in settling an

10  action.   563 F.3d at 965.   Courts have recognized that "'"[g]reat weight" is

11  accorded to the recommendation of counsel, who are most closely acquainted with

12  the facts of the underlying litigation.'"   *DIRECTV*, 221 F.R.D. at 528; *accord*

13  *Omnivision*, 559 F. Supp. 2d at 1043 ("'[t]he recommendations of plaintiffs'

14  counsel should be given a presumption of reasonableness'").

15          Lead Counsel has significant experience in securities and other complex

16  class action litigation and has negotiated numerous other substantial class action

17  settlements throughout the country.  *See* www.rgrdlaw.com; www.blbglaw.com.

18  Having carefully considered and evaluated, *inter alia*, the relevant legal authorities

19  and evidence to support the claims asserted against Defendants, the likelihood of

20  prevailing on these claims, the risk, expense, and duration of continued litigation,

21  and the likely appeals and subsequent proceedings necessary if Lead Plaintiffs did

22  prevail against Defendants at trial, Lead Counsel has concluded that the Settlement

23  is a very good result for the Class.  *See* Joint Decl., ¶¶6-7, 95, 99-100.  Here,

24  "[t]here   is   nothing   to   counter   the   presumption   that   Lead   Counsel's

25  recommendation is reasonable."   *Omnivision*, 559 F. Supp. 2d at 1043.

26  Importantly, Lead Plaintiffs, who were active in the Litigation, authorized counsel

27  to settle it and support the reasonableness of the Settlement.  *See* Cotera Decl., ¶4;

28  ATRS Decl., ¶4.

- 19 -

**G.      Reaction of the Class Supports Approval of the Settlement**

Pursuant to the Notice Order, the Court-approved Notice was mailed to potential Class Members who could be identified with reasonable effort and a Summary Notice was published once in the national edition of *The Wall Street Journal* and over the *PR Newswire* on August 14, 2018. *See* Miller Decl., ¶¶9-10. These documents were also posted on the Settlement-specific website established by the Claims Administrator. *Id.*, ¶12.  The Notice advised the Class of the terms of the Settlement and the Plan of Allocation as well as the procedure and deadline for filing objections.  As of October 12, 2018, more than 61,200 Notices had been mailed to potential Class Members and nominees. *Id.*, ¶9.  While the objection deadline, October 29, 2018, has not yet passed, not a single Class Member has filed an objection to the Settlement, the Plan of Allocation, or counsel's request for an award of attorneys' fees and expenses.[9]

While not conclusive, "the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027.  Of course, "[t]he fact that some class members object to the Settlement does not by itself prevent the court from approving the agreement." *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001).  "'A certain number of . . . objections are to be expected in a class action.'" *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

Each of the above factors fully supports a finding that the Settlement is fair, reasonable, and adequate, and therefore deserves this Court's final approval.

---

[9]      In accordance with the Notice Order, Lead Plaintiffs will respond to any objections on or before November 12, 2018.

1485878_2

## V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Plaintiffs also seek approval of the Plan of Allocation.  The Plan of Allocation provides an equitable basis to allocate the Net Settlement Fund among all Class Members who submit an acceptable Proof of Claim, and it is set forth in full in the Notice mailed to potential Class Members.

Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate.  *Ikon*, 194 F.R.D. at 184; *see also Class Plaintiffs*, 955 F.2d at 1284-85.   District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably."  *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).

Courts have concluded that "[i]t is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits."  *See Omnivision*, 559 F. Supp. 2d at 1045; *Heritage Bond*, 2005 WL 1594403, at *11 (concluding as fair, a plan of allocation which "'makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue'").  Here, the Plan of Allocation was developed by Lead Counsel with the assistance of Lead Plaintiffs' economic expert based on Lead Plaintiffs' damages theory.  Joint Decl., ¶102.  As a result, the Plan of Allocation will result in a fair distribution of the available proceeds among Class Members who submit valid claims and therefore should be approved.  To date, there has been no objection to the Plan of Allocation.

## VI.    CONCLUSION

The Settlement is a highly favorable result, given the presence of skilled counsel for all parties, the extensive settlement negotiations, the considerable risk,

- 21 -

1485878_2

expense and delay if the Litigation were to continue, the certain and immediate benefit of the Settlement to Members of the Class, and the lack of opposition mounted by Class Members to date.  In addition, the Plan of Allocation tracks the theory of damages asserted in the case and is necessarily fair, reasonable, and adequate.  Therefore, Lead Plaintiffs respectfully request that this Court finally approve the Settlement of this Litigation and the Plan of Allocation as fair, reasonable, and adequate.

DATED:  October 15, 2018                    Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP


                                                 s/ Robert R. Henssler Jr.
                                            ROBERT R. HENSSLER JR.

                                            DARREN J. ROBBINS
                                            ROBERT R. HENSSLER JR.
                                            CHRISTOPHER D. STEWART
                                            AUSTIN P. BRANE
                                            MATTHEW J. BALOTTA
                                            655 West Broadway, Suite 1900
                                            San Diego, CA  92101
                                            Telephone:  619/231-1058
                                            619/231-7423 (fax)

                                            Lead Counsel for Lead Plaintiff City of
                                            Miami Fire Fighters' and Police Officers'
                                            Retirement Trust


                                            BERNSTEIN LITOWITZ BERGER
                                              & GROSSMANN LLP


                                                 s/ David R. Stickney
                                            DAVID R. STICKNEY

1

2                           DAVID R. STICKNEY
BENJAMIN GALDSTON

3                           LUCAS E. GILMORE
BRANDON MARSH

4                           12481 High Bluff Drive, Suite 300
San Diego, CA  92130

5                           Telephone:  858/793-0070
858/793-0323 (fax)

6                           – and –
GERALD SILK

7                           AVI JOSEFSON
1285 Avenue of the Americas, 38th Floor

8                           New York, NY  10019
Telephone:  212/554-1400

9                           212/554-1444 (fax)

10                        Lead Counsel for Lead Plaintiff Arkansas
Teacher Retirement System

11                       CYPEN & CYPEN
STEPHEN H. CYPEN

12                       975 Arthur Godfrey Road, Suite 500
Miami Beach, FL  33140

13                       Telephone:  305/532-3200
305/535-0050 (fax)

14

15                       KLAUSNER, KAUFMAN, JENSEN
  & LEVINSON

16                       ROBERT D. KLAUSNER
7080 NW 4th Street

17                       Plantation, FL  33317
Telephone:  954/916-1202

18                       954/916-1232 (fax)

19                       Additional Counsel for Lead Plaintiff

20

21

22

23

24

25

26

27

28

- 23 -

### CERTIFICATE PURSUANT TO LOCAL RULE 5-4.3.4

I, Robert R. Henssler Jr., am the ECF User whose identification and password are being used to file the Memorandum of Points and Authorities in Support of Lead Plaintiffs' Motion for Final Approval of Settlement and Approval of Plan of Allocation. In compliance with Local Rule 5-4.3.4(a)(2), I hereby attest that Benjamin Galdston has concurred in this filing.


DATED:  October 15, 2018                          s/ Robert R. Henssler Jr.
                                                  ROBERT R. HENSSLER JR.

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on October 15, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Robert R. Henssler Jr.
ROBERT R. HENSSLER JR.

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  bhenssler@rgrdlaw.com

# Mailing Information for a Case 8:13-cv-01818-CJC-JPR In re Quality Systems, Inc. Securities Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Matthew James Balotta**
  mbalotta@rgrdlaw.com,e_file_sd@rgrdlaw.com,lmix@rgrdlaw.com

- **Austin P Brane**
  abrane@rgrdlaw.com

- **Benjamin Galdston**
  beng@blbglaw.com,denab@blbglaw.com,jessica.cuccurullo@blbglaw.com

- **Kathryn K George**
  kathryn.george@lw.com

- **Lucas E Gilmore**
  lucas.gilmore@blbglaw.com

- **Andrew Gray**
  andrew.gray@lw.com,andrew-gray-3541@ecf.pacerpro.com,#ocecf@lw.com,khadijah-fields-2405@ecf.pacerpro.com,jana.roach@lw.com

- **Robert Russell Henssler , Jr**
  bhenssler@rgrdlaw.com,e_file_sd@rgrdlaw.com,tjohnson@rgrdlaw.com

- **Michele D Johnson**
  michele.johnson@lw.com,michele-johnson-7426@ecf.pacerpro.com,#ocecf@lw.com,khadijah-fields-2405@ecf.pacerpro.com,jana.roach@lw.com

- **Avi Josefson**
  avi@blbglaw.com

- **Brandon Marsh**
  Brandon.Marsh@blbglaw.com

- **Brian Oliver O'Mara**
  bomara@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Darren J Robbins**
  e_file_sd@rgrdlaw.com

- **Nicholas J Siciliano**
  nicholas.siciliano@lw.com,nicholas-siciliano-5932@ecf.pacerpro.com

- **Gerald H Silk**
  jerry@blbglaw.com

- **Christopher Dennis Stewart**
  CStewart@rgrdlaw.com,e_file_sd@rgrdlaw.com,nhorstman@rgrdlaw.com,tjohnson@rgrdlaw.com

- **David R Stickney**
  davids@blbglaw.com,brandon.marsh@blbglaw.com

- **Jordanna G Thigpen**
  jthigpen@jjllplaw.com,vcassis@jjllplaw.com

- **Peter Allen Wald**
  peter.wald@lw.com,peter-wald-7073@ecf.pacerpro.com,#ocecf@lw.com,#sflitigationservices@lw.com,andrew.gray@lw.com

- **Whitney Bruder Weber**
  whitney.weber@lw.com,whitney-weber-2642@ecf.pacerpro.com,#sflitigationservices@lw.com

- **Jeff S Westerman**
  jwesterman@jswlegal.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Stephen              H Cypen
Cypen and Cypen
975 Arthur Godfrey Road   Suite 500
Miami Beach, FL 33140
```