1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **In re QUALITY SYSTEMS, INC. SECURITIES LITIGATION** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No.: SACV 13-01818-CJC-JPR**<br><br>**ORDER GRANTING PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF SETTLEMENT [Dkt. 102] AND FOR ATTORNEYS' FEES, EXPENSES, AND LEAD PLAINTIFFS' AWARD [Dkt. 104]** |

**I. INTRODUCTION**

    Plaintiffs City of Miami Fire Fighters' and Police Officers Retirement Trust ("Miami") and Arkansas Teacher Retirement System ("ATRS") bring this putative federal securities fraud class action on behalf of all persons or entities who purchased or

otherwise acquired Quality Systems, Inc. ("QSI") common stock from May 26, 2011 through July 25, 2012 ("the Class Period"). (Dkts. 1 [Complaint], 26 [Operative Amended Complaint, hereinafter "AC"].) Plaintiffs allege that during the Class Period, QSI and several of its officers[1] (collectively, "Defendants") made misleading and false statements regarding QSI's revenue forecasts and sales pipeline figures for its software. (*See generally* AC.)

After five years of litigation, Plaintiffs' Lead Counsel, Robbins Geller Rudman & Dowd LLP and Bernstein Litowitz Berger & Grossmann LLP, negotiated a $19 million cash settlement ("Settlement") on behalf of the Class. Plaintiffs now move, unopposed, for final approval of the Settlement and corresponding Plan of Allocation, (Dkt. 102), as well as attorneys' fees, litigation expenses, and reimbursement of Lead Plaintiffs' costs, (Dkt. 104). For the following reasons, both motions are **GRANTED**.

## II. BACKGROUND

QSI is a California corporation "that develops and markets practice management and electronic health records ("EHR") software to medical and dental care providers." (AC ¶ 23.) During the Class Period, the "principal driver" of QSI's stock price was QSI's ability to increase its revenue each year. (*Id*. ¶ 33.) QSI's growth, in turn, depended on selling and maintaining its software systems for healthcare providers. (*Id*. ¶ 34.) QSI's growth was also dependent, in part, on "greenfield" sales, which refer to software system sales to customers without an existing EHR system. (*Id*. ¶ 38.)

---

[1] The individual Defendants are QSI's Chief Executive Officer, Steven T. Plochocki, QSI's Chief Financial Officer, Paul A. Holt, and QSI's founder and Board Chairman, Sheldon Razin. (AC ¶¶ 24–26.)

Plaintiffs generally allege that the QSI officers knew during the Class Period that the market for healthcare software systems was becoming increasingly saturated and that greenfield sales opportunities were decreasing.  Despite this knowledge, the individual Defendants purportedly made several misrepresentations about the state of QSI's past and current sales pipeline and used those misrepresentations to support its growth projections.  According to Plaintiffs, however, QSI's growth projections "lacked any objective basis and . . . were totally inconsistent with QSI's actual business performance."  (*Id*. ¶ 44.)  Based on this alleged conduct, Plaintiffs assert claims for violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.  (*See generally* AC.)

On October 20, 2014, the Court granted Defendants' motion to dismiss Plaintiffs' Amended Complaint on the grounds that the individual Defendants' statements regarding QSI's sales pipeline were non-actionable puffery or protected by the safe harbor provision of the Private Securities Litigation Reform Act ("PSLRA").  (Dkt. 39.)  In 2017, the Ninth Circuit reversed this Court's dismissal, finding that several of Defendants' statements were "materially false or misleading" and not protected under the PSLRA.  *See In re Quality Sys., Inc. Sec. Litig*., 865 F.3d 1130, 1150 (9th Cir. 2017).  Following remand, Plaintiffs served requests for production of documents, interrogatories, and thirty-two non-party subpoenas.  In the meantime, Defendants sought review of the Ninth Circuit's reversal before the Supreme Court.

On May 9, 2018, the parties participated in a mediation with Gregory P. Lindstrom, Esq. of Phillips ADR.  (Dkt. 102. at 2, 5.)  The next day, the parties accepted a double-blind mediator's recommendation and reached an agreement-in-principle to settle the case for $19 million.  (*Id*.)  The parties continued negotiations, resulting in the terms and conditions set forth in their Joint Stipulation.  (Dkt. 95-2.)  On June 8, 2018, the parties requested that the Supreme Court defer action on Defendants' pending petition

for writ of certiorari.  (Dkt. 96 at 4.)  Plaintiffs then moved for preliminary approval of the Settlement and for class certification for settlement purposes, which the Court granted on July 30, 2018.  (*See generally id*.)

## III.  DISCUSSION

### A.      Fairness of the Settlement

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. Seattle*, 995 F.2d 1268, 1276 (9th Cir. 1992)).  Federal Rule of Civil Procedure 23 "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation and quotation marks omitted).  To determine whether this standard is met, a district court must consider a number of factors, including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement."  *Id.* (citation and quotation marks omitted).  Having fully considered the *Staton* factors, the Court finds this Settlement fundamentally fair and reasonable to the parties involved.

### 1.  *Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation*

Plaintiffs maintain the merits of their case but acknowledge that their path to recovery was not without significant risk.  (Dkt. 102 at 12.)  Although Plaintiffs survived

Defendants' motion to dismiss on appeal to the Ninth Circuit, Plaintiffs' case remained at risk in light of Defendants' pending petition before the Supreme Court. Moreover, had the case proceeded to trial, Plaintiffs faced serious obstacles to establishing liability and damages. For instance, to prevail on their section 10(b) claims, Plaintiffs bear the burden of proving not only that Defendants made a misstatement or omission of material fact with the requisite scienter, but also that Plaintiffs relied on that misstatement and suffered resulting damages. *DSAM Global Value Fund v. Altris Software*, 288 F.3d 385, 388 (9th Cir. 2002). Defendants vigorously contest liability, particularly with regards to the elements of falsity and scienter. Indeed, Plaintiffs acknowledge that the evidence regarding scienter is susceptible to varying interpretations and that Defendants' take "certainly had the possibility of success." (Dkt. 102 at 14.) In addition to bearing the burden of proof on their claims, Plaintiffs also faced the risk inherent in any complex shareholder litigation dependent on expert testimony and complicated damage assessments. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744–45 (S.D.N.Y. 1985) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions"), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

Plaintiffs also correctly anticipate that continued litigation would be costly and unpredictable. If this action continued, Plaintiffs' motion for class certification and Defendants' motions for summary judgment would have to be briefed and argued. The parties would also spend substantial time and expense in preparing for trial. Trial itself would be uncertain, litigious, and lengthy, as well as possibly delayed if the Supreme Court granted certiorari. The obstacles inherent in continued litigation, when coupled with Defendants' strong arguments against liability, weigh in favor of granting final approval of the Settlement. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041–42 (N.D. Cal. 2008) (discussing how a class action settlement offered an

"immediate and certain award" in light of significant obstacles posed through continued litigation); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement.").

### 2. *Amount Offered in Settlement*

The Settlement amount is substantial.  The Class will receive $19 million, less Court-awarded fees and expenses and the cost of notice.  (Dkt. 95-2.)  This recovery provides an immediate and tangible benefit to the Class and eliminates the risk that they could receive less than that amount, or nothing at all, if the litigation continued. Importantly, this recovery far exceeds the median securities settlement recovered as a percentage of estimated damages.  In the Ninth Circuit from 2007 through 2016, the median settlement as a percentage of estimated damages was 2.2%.  (Dkt. 102 at 11 [citing sources].)  Here, Plaintiffs' Settlement represents approximately 7 to 13% of the Class's recoverable damages as calculated by Plaintiffs' damages expert, and as much as 22% or more of the Class's estimated damages when considering Defendants' strong defenses to liability.  (*Id*. at 10–11.)

The Settlement amount of $19 million, plus all interest and less any taxes, attorneys' fees, and expenses awarded by the Court, will be deposited in the Net Settlement Fund.  (Dkt. 108 [Declaration of Eric J. Miller, hereinafter "Miller Decl."] Ex. A at 5.)  Plaintiffs' Plan of Allocation for the Net Settlement Fund is the product of Plaintiffs' damages expert's calculation of the potential amount of artificial inflation in QSI's stock proximately caused by Defendants' purportedly false and misleading statements and omissions.  (*Id*. at 10.)  Under Plaintiffs' Plan of Allocation, the estimated average recovery is $0.63 per damaged share, before fees and expenses.  (*Id*.)  Class

members may recover more or less, depending on when their shares were purchased or acquired, the price at the time of purchase or acquisition, and whether the shares were sold, and if so, for how much.  (*Id.*)  Both the formula for calculating the amount each Class member will receive, as well as the average amount of recovery, weigh in favor of final approval.

### 3. Extent of Discovery Completed, Stage of Proceedings, and Experience and View of Counsel

Where the "parties have sufficient information to make an informed decision about settlement," this factor weighs in favor of approving the Settlement.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (internal citation and quotation marks omitted).  Here, the parties settled only after partaking in substantial investigation and discovery, including the production of over 350,000 pages of documents.  The parties also participated in extensive settlement negotiations, including an all-day mediation during which the parties' claims and defenses were fully vetted.  Those negotiations allowed the parties to reasonably evaluate the cost, duration, and risk of further litigation.

Accordingly, Lead Counsel are confident that they had sufficient information to make an "intelligent evaluation of the strengths and weaknesses" of Plaintiffs' case. (Dkt. 102 at 19.)  Lead Counsel are also qualified to draw this conclusion, as they have significant experience in securities and other complex class action litigation, and have negotiated numerous other substantial class action settlements throughout the country. (*Id.*)  Additionally, Lead Counsel's conclusion is further supported by an experienced and impartial mediator.  (*Id.* at 9.)  The Court is satisfied that the parties reached the proposed Settlement after acquiring a full and fair understanding of the likelihood of success of their cases.  This factor weighs in favor of final approval.

1

2

### 4.   Reaction of Class Members

3

Pursuant to the Court's order granting preliminary approval, notice of the Settlement was mailed to potential Class members who could be identified with reasonable effort.  (Miller Decl. ¶¶ 9–10.)  A summary notice was also published in *The Wall Street Journal* and *PR Newswire* on August 14, 2018.  (*Id*.)  These documents were also posted on the Settlement-specific website established by the Claims Administrator.  (*Id*. ¶ 12.)  The notice advised the Class of the terms of the Settlement and the Plan of Allocation, as well as the procedure and deadline for filing objections.  (*See* Miller Decl. Ex. A.)  As of October 12, 2008, more than 61,200 notices had been mailed to potential Class members.  (Miller Decl. ¶ 9.)  The deadline for lodging objections to the Settlement was October 29, 2018.  No Class member filed an objection to the Settlement, the Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and expenses.  (Dkt. 102 at 20.)  Because the reaction of the Class has been positive, this factor favors final approval.  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.").

Accordingly, the Court finds the Settlement and Plan of Allocation to be fair, adequate, and reasonable under the *Staton* factors.  The $19 million Settlement is a highly favorable result in light of the considerable risk, expense, and delay of continued litigation.

//

**B.      Attorneys' Fees, Expenses, and Lead Plaintiffs' Award**

*1.      Attorneys' Fees*

Lead Counsel also seek attorneys' fees.  (Dkt. 104 at 5.)  A district court has the authority and the duty to determine the fairness of attorneys' fees in a class action settlement.  *See Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999).  When a settlement produces a common fund for the benefit of the entire class, as it does here, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to calculate attorneys' fees.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942–43 (9th Cir. 2011).  The amount of fees awarded rests ultimately in the Court's sound discretion.  *Evans v. Jeff D.*, 475 U.S. 717, 736 n.26 (1986), *superseded by statute on other grounds*.

The Court agrees with Lead Counsel that the percentage-of-recovery method is the most appropriate measure here.  (*See* Dkt. 104 at 5.)  Under this method, the Ninth Circuit has held that 25 percent of the fund is the "benchmark" for a reasonable fee award, and courts must provide adequate explanation in the record of any "special circumstances" to justify a departure.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942–43 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent.  That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in this case." (internal citation omitted)).

Lead Counsel appropriately request $4,750,000 in attorneys' fees, or 25% of the $19 million Settlement.  (Dkt. 104 at 4.)  Awarding the benchmark percentage is

consistent with other courts in this Circuit.  *See In re MGM Mirage Sec. Litig*., 708 Fed. App'x 894, 897 (9th Cir. 2017) (affirming 25% benchmark fee award); *In re Amgen, Inc*. *Sec. Litig*., 2016 WL 10571773, at *9–10 (C.D. Cal. Oct. 25, 2016); *Todd v. STAAR Surgical Co*., 2017 WL 4877417, at *5 (C.D. Cal. Oct. 24, 2017) (awarding 25% fee in $7 million settlement); *Kmiec v. Powerwave Techs*., *Inc*., 2016 WL 5938709, at *7 (C.D. Cal. July 11, 2016) (awarding 25% fee in $8.2 million settlement).

Lead Counsel also provide the Court with the materials necessary to perform a "lodestar cross-check."  (Dkt. 104 at 16–17.)  Courts commonly—even after having decided to utilize the percentage-of-recovery method—perform a lodestar cross-check by comparing the percentage-of-recovery figure with a rough calculation of the lodestar to assess the reasonableness of the percentage award.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyer's investment of time in the litigation, provides a check on the reasonableness of the percentage award."); *see also In re Bluetooth*, 654 F.3d at 943 (encouraging a "comparison between the lodestar amount and a reasonable percentage award").

Here, Lead Counsel calculate their lodestar fee to be $5,062,465 based on the reasonable hours worked and reasonable hourly rates.  (Dkt. 104 at 17.)  The percentage award is therefore less than the lodestar fee, and reflects a negative multiplier of approximately 0.94.  The Ninth Circuit has approved a multiplier range of positive 1.0 to 4.0.  *Vizcaino*, 290 F.3d at 1051 n.6.  Given that the multiplier here falls below the approved range, the percentage award is reasonable.  This Court will therefore award Lead Counsel their requested attorneys' fees of $4,750,000.

//

### 2. Expenses

Lead Counsel also request $159,715.35 in out-of-pocket expenses incurred in prosecuting and resolving the action on behalf of the Class.  (Dkt. 104 at 18.)  Neither Defendants nor the Class members object to these expenses, which are significantly less than the $300,000 maximum stated in the notice.  (Miller Decl. Ex. A.)  The Court has reviewed these expenses and concludes that they are of the sort ordinarily billable to paying clients. *Harris v. Marhoefer*, 24 F.3d 16, 20 (9th Cir. 1994).  The Court will therefore award the requested expenses of $159,715.35.

### 3. Lead Plaintiffs' Award

Finally, Lead Plaintiffs Miami and ATRS seek awards of $2,000 and $2,119.26, respectively.  (Dkt. 104 at 20.)  Under the PSLRA, a class representative may request an award of reasonable costs and expenses directly relating to their representation of the class. *See* 15 U.S.C. § 78u-4(a)(4); *Staton*, 327 F.3d at 977.  When evaluating the reasonableness of a lead plaintiff award, courts may consider several factors, including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions," and the time the plaintiff has expended in pursing the litigation. *Staton*, 327 F.3d at 977 (citation and quotation marks omitted)

Here, Miami and ATRS devoted substantial time and effort to monitoring the litigation and assisting Lead Counsel.  They reviewed and commented on case filings, offered input on litigation strategy during discovery and the parties' mediation, and identified and provided relevant information throughout the litigation.  Under similar circumstances, courts have approved as reasonable awards of $10,000 or more to lead plaintiffs. *See, e.g.*, *Todd*, 2017 WL 4877417, at *6 (awarding $10,000); *Buccellato v. AT&T Operations, Inc.*, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) (awarding

$20,000); *In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815, 816 (3d Cir. 2010) (awarding $15,000).  The Court finds that the total requested Lead Plaintiffs' award of $4,119.26 is reasonable in light of the significant time and effort Lead Plaintiffs expended.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for final approval of the Settlement and Plan of Allocation is **GRANTED**.  Plaintiffs' motion for attorneys' fees, expenses, and Lead Plaintiffs' award is also **GRANTED**.  Lead Counsel is awarded **$4,750,000** in attorneys' fees and **$159,715.35** in expenses.  Lead Plaintiffs Miami and ATRS are awarded **$2,000** and **$2,119.26**, respectively.

DATED:     November 19, 2018

_____

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE